[No. B126155. Second Dist., Div. Four. Oct. 6, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL STONE, Defendant and Appellant.

COUNSEL

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Jennevee H. de Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), P. J.**—Michael Stone appeals from the judgment entered following a jury trial that resulted in his conviction of manufacturing phencyclidine (PCP) (Health & Saf. Code, § 11379.6, subd. (a); count 1)[1] and a finding that he manufactured PCP, its analogs, and precursors (Pen. Code, § 1203.07, subd. (a)(7)); court findings that he had suffered two prior convictions which qualified as strikes under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and his plea of guilty to misdemeanor infliction of corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a); count 2). He was sentenced to prison for the term of 25 years to life on count one. He was also ordered to pay a $5,000 restitution fine, a $5,000 parole revocation fine, and a $50 laboratory analysis fee.

Appellant contends the evidence is insufficient to support his conviction for manufacturing PCP because it merely establishes he was engaged in the

---

[1]All further section references are to the Health and Safety Code unless otherwise indicated.

manufacture of piperidine, which has legitimate uses in addition to being a precursor to the manufacture of PCP. He further contends his sentence of 25 years to life constitutes cruel or unusual (or both) punishment under the federal and state Constitutions. Alternatively, he contends the trial court abused its discretion by refusing to vacate one of his strikes.

Respondent contends the judgment must be modified and the abstract of judgment corrected to reflect the imposition of a $50 state penalty assessment and a $35 county penalty assessment.

Based on our review of the record and applicable law, we modify the judgment to reflect the imposition of a $50 state penalty assessment and a $35 county penalty assessment, and, as so modified, we affirm the judgment. We direct the superior court to prepare an amended abstract of judgment accordingly.

FACTUAL SUMMARY

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established that in early August 1997, Bianca McMullin entered the garage of 6850 North Gail Avenue in Long Beach, where she and appellant resided, in response to his request that she check for chemical smells. She became nauseous from the odor of chemicals. Appellant informed McMullin that he was making "one of the chemicals for PCP." Appellant spent two to three hours daily in the garage, and almost daily, he was assisted by several individuals.

On August 16, 1997, around 10:00 p.m., during an argument, appellant struck McMullin. He later placed her in a choke hold. Around 6:00 a.m. the next day, McMullin met with the police and informed the officers that "there was a PCP lab in the garage."

McMullin unlocked the front door of the residence, and the officers who accompanied her announced their presence and entered. A male known as "Mooney," who appeared surprised, fled to another room where he was detained. Appellant was located in a bedroom and detained. Cash in the amount of $3,583, bundled in a rubber band, and a traffic ticket in appellant's name were recovered from a nightstand. Also recovered were three sets of keys, including one which opened the lock of the garage door, chemical cards, a pager, and address books. A scale was found in the den. A book entitled Secrets of Methamphetamine Manufacture was on the bed. That book contained a chapter containing instructions on how to set up

hydrogenerators. Appellant told McMullin, who observed him reading it, that it showed him how to make hydrogenerators.

An officer who entered the garage was compelled to leave because of the strong odor of chemicals. Chemicals and equipment associated with the manufacture of piperidine were found in the garage.

Long Beach Police Detective Gregory Roberts, who was with the drug investigation section, also observed sodium hydroxide, which is commonly used in the final mixing stages to form PCP. He further observed that portion of the manufacturing process known as "hydrogenation of pyridine to form piperidine." Appellant's fingerprints were found on a beaker and a bottle containing ethanol. Two hydrogenerators, which are used to convert pyridine to piperidine, were seized. Ethanol is used to speed up that process. Also found were glassware, beakers, pumps, hoses, and plastic tubing. Roberts opined the street value of the seven recovered gallon jugs of piperidine was approximately $21,000 to $56,000, or from $3,000 to $8,000 a gallon.

Los Angeles Police Officer Juan Villanueva, an expert in the clandestine operation of drug laboratories and production of controlled substances, opined that the chemicals and equipment were used to produce piperidine, a precursor to PCP.

He opined the street value of piperidine was between $5,000 to $7,000 per gallon. He further opined that while it had limited value for industrial use, it was commonly sold for the manufacture of PCP. Piperidine, which had been readily accessible, became more difficult to obtain because of restrictions in 1989. Possession and purchase of piperidine for industrial uses is regulated by the California Department of Justice as a controlled substance. He added that a permit and a 21-day waiting period are prerequisites.

Appellant presented evidence to explain the non-drug-related origins of the $3,583 found on the nightstand in the bedroom where he was arrested. He also supplied evidence to show that Mooney, not he, used the garage.

DISCUSSION

1. *Purpose of Piperidine to Manufacture PCP*

Appellant contends the evidence is insufficient to establish his participation in the manufacture of PCP, because the evidence only proved he operated a laboratory to produce piperidine, a precursor to PCP. We find the evidence ample.

■ "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. (*People* v. *Stanley* (1995) 10 Cal.4th 764, 792 [42 Cal.Rptr.2d 543, 897 P.2d 481].) ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]' " (*Id.* at pp. 792-793.)" (*People* v. *Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

■ The fallacy of appellant's position arises from his premise that he was not engaged in the manufacture of PCP within the meaning of section 11379.6,[2] because (1) that "statute does not refer to precursor chemicals"; and (2) "piperidine, the alleged precursor chemical in this case, has some limited industrial use." The fatal flaw of his premise lies in his restrictive characterization of the chemicals and equipment in the garage laboratory as being connected exclusively with the manufacture of piperidine and his failure to take into account the other evidence presented. When viewed in context, instead of isolation, the fact that appellant was engaged in the manufacture of piperidine is but one link in the chain establishing appellant was engaged in the manufacture of PCP.

PCP is a controlled substance whose possession and sale is illegal. (See, e.g., §§ 11032, 11055, subd. (e)(3), 11377, subd. (a), 11378.5.) "Piperidine

---

[2]Section 11379.6, subdivision (a) provides: "Except as otherwise provided by law, every person who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance specified in Section 11054, 11055, 11056, 11057, or 11058 shall be punished by imprisonment in the state prison for three, five, or seven years and by a fine not exceeding fifty thousand dollars ($50,000)."

is a colorless liquid which has various industrial uses, but is also a 'precursor' for making PCP." (*U.S.* v. *Washington* (10th Cir. 1988) 858 F.2d 590, 592.)

The United States "Congress criminalized piperidine possession . . . because [it is one of the] intermediate steps of the manufacture of PCP." (*United States* v. *Wilson* (9th Cir. 1986) 781 F.2d 1438, 1439; see 21 U.S.C. §§ 802 (34)(J), 841(b)(1)(A)(vi), (b)(1)(B)(vi), 842(a)(11), 846.) In enacting section 11379.6, our state Legislature intended to "criminalize all acts which are part of the manufacturing process [of PCP,]" of which piperidine is an integral part. (*People* v. *Heath* (1998) 66 Cal.App.4th 697, 705 [78 Cal.Rptr.2d 240].)

Contrary to appellant's claim, construing section 11379.6 to encompass the manufacture of piperidine for the purpose of manufacturing PCP does not pose an "unacceptable risk" to individuals who possess piperidine for legitimate purposes. Such risk has been rendered nugatory by reason of the mandatory permit procedure, i.e., permit holders are entitled legally to possess piperidine. In contrast, possession of piperidine with intent to manufacture PCP is a felony carrying a sentence range of two, four, or six years (§ 11383, subd. (b)(1)) and for which probation is prohibited (Pen. Code, § 1203.07, subd. (a)(10)).

The totality of the circumstances in this case reveals appellant did not simply possess piperidine with the intent to manufacture PCP. The record, instead, reflects appellant was clearly engaged in the process of manufacturing piperidine as an intermediate step in his manufacture of PCP. Appellant admitted to McMullin that he was making "one of the chemicals for PCP." Chemicals used to manufacture both piperidine and PCP were found in the garage. Specifically, the evidence established that after piperidine, which is not readily obtainable on the streets, is produced, sodium hydroxide, which was found in the garage laboratory, is added in the final mixing to form PCP. Based on these facts, the jury was entitled to infer that appellant was manufacturing piperidine with the goal of producing PCP as the end product.[3]

Appellant himself "concedes that the weight of . . . judicial authority is against him in this case" but urges this court to consider anew "the issue of what constitutes manufacturing under [section 11379.6]" because "that statute has yet to be definitively resolved." (See, e.g., *People* v. *Heath, supra,* 66

---

[3]McMullin testified that appellant put "one of the chemicals to make PCP" in the jugs and sold the jugs for $5,000 apiece. A reasonable inference arises that appellant apparently also sold the piperidine to others.

Cal.App.4th 697, 705; *People* v. *Lancellotti* (1993) 19 Cal.App.4th 809, 813-814 [23 Cal.Rptr.2d 640]; *People* v. *Jackson* (1990) 218 Cal.App.3d 1493,1504-1505 [267 Cal.Rptr. 841]; *People* v. *Combs* (1985) 165 Cal.App.3d 422, 427 [211 Cal.Rptr. 617].)

Our review of section 11379.6 discloses no ambiguity. The Legislature's intent and the import of section 11379.6 are clear: Each and every stage of the process for manufacturing PCP—from inception through completion—is embraced by the proscription against the manufacture of PCP. When properly phrased, the crucial inquiry regarding a precursor to PCP, such as piperidine, in the context of section 11379.6, is: Was the manufacture of piperidine solely an end to itself or was its manufacture simply or also an intermediate step to the ultimate goal of manufacturing PCP? In this case, appellant clearly was engaged in the manufacture of piperidine for the purpose of manufacturing PCP.

2. *25 Years to Life Not Cruel or Unusual (or Both) Punishment*

█ Appellant contends his sentence of 25 years to life constitutes cruel or unusual (or both) punishment under the federal and state Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) We find no constitutional infirmity.

The basic fallacy of appellant's argument lies in his failure to acknowledge that he "is not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses. [Citations.]" (*People* v. *Kinsey* (1995) 40 Cal.App.4th 1621, 1630 [47 Cal.Rptr.2d 769], review den. Mar. 14, 1996.) Appellant's adult criminal history includes prior convictions for voluntary manslaughter. His sentence therefore was based on these proven prior convictions and not solely on his current convictions. Assuredly, it is not constitutionally proscribed. (See, e.g., *People* v. *Kinsey, supra,* 40 Cal.App.4th at pp. 1624, 1630-1631 [29 years to life not cruel or unusual punishment under state Constitution]; *People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1412-1417 [48 Cal.Rptr.2d 256], review den. Mar. 14, 1996 [61 years to life not cruel or unusual punishment as applied]; *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1134-1137 [46 Cal.Rptr.2d 351], review den. Feb. 15, 1996 [upholding sentence of 15 indeterminate terms of 25 years to life plus determinate term of 53 years against cruel and/or unusual punishment as applied challenges].)

### 3. *Refusal to Vacate Strike Not Abuse of Discretion*

 Appellant contends the court abused its discretion in refusing to vacate one of his strikes in the interest of justice. (Pen. Code, § 1385.) We find no abuse:

At sentencing, the trial court announced it had considered both the probation report and appellant's comments. The court stated that its sworn duty was to uphold the Three Strikes law regardless of its personal approval or disapproval of that law. In declining to vacate either of appellant's two strikes, the court found no basis for concluding he was outside the spirit of the Three Strikes law. Specifically, in considering appellant's likelihood of future change, it saw nothing in his past conduct which would indicate he would be a more law-abiding citizen. The court did note, however, appellant's efforts to read and study while in prison.

With respect to the current crime, the court found no factors in mitigation and identified the following aggravating factors: (1) the manner in which the crime was committed indicated planning, sophistication, and professionalism; (2) he had served prior prison terms; (3) appellant was on parole when the 'crime was committed; (4) his prior performance while on parole and probation was unsatisfactory; and (5) his adult convictions were numerous and of increasing seriousness.

 "Pursuant to section 1385, subdivision (a), 'in furtherance of justice,' the trial court may dismiss an allegation or vacate a finding that a prior serious or violent felony conviction qualifies as a strike under the Three Strikes law. On appeal, we review the court's ruling under the abuse of discretion standard. (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628]; accord, *People* v. *Williams* (1998) 17 Cal.4th 148, 151-152, 158-159 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

" 'The governing canons are well established: "This discretion . . . is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]" (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 . . . .) . . . "[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and legal policies appropriate to the particular matter at issue." (*People* v. *Russel* [(1968) 69 Cal.2d 187,] 195 [70 Cal.Rptr. 210, 443 P.2d 794].)' (*People* v. *Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 [60 Cal.Rptr.2d 93, 928 P.2d 1171].)

"The abuse of discretion standard 'is deferential. . . . But it is not empty.' (*People* v. *Williams, supra,* 17 Cal.4th at p. 162.) The touchstone for that standard, where a trial court is asked to dismiss a prior serious or violent felony conviction which qualifies as a strike 'in furtherance of justice' pursuant to section 1385, subdivision (a), was first stated in *Williams* and was recently reiterated in *People* v. *Garcia* (1999) 20 Cal.4th 490, 503 [85 Cal.Rptr.2d 280, 976 P.2d 831]. It is whether 'in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant *may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.*' (*People* v. *Williams, supra,* 17 Cal.4th at p. 161, italics added; *People* v. *Garcia, supra,* 20 Cal.4th at p. 503.)" (*People* v. *Gaston* (1999) 74 Cal.App.4th 310, 314-315 [87 Cal.Rptr.2d 829].)

 Mindful of these principles, we conclude that appellant is an exemplar of the "revolving door" career criminal to whom the Three Strikes law is addressed. Unlike the defendant in *People* v. *Garcia* (1999) 20 Cal.4th 490 [85 Cal.Rptr.2d 280, 976 P.2d 831] appellant's criminal history, which spanned from 1982 into 1997, includes prior convictions for voluntary manslaughter, both a violent and serious felony, kidnapping, a serious felony, and assault with a deadly weapon, which carries an inherent threat of violence, and the service of four prior prison terms. (Cf. *People* v. *Garcia, supra,* 20 Cal.4th at p. 503 [defendant's prior offenses were committed during a "single period of aberrant behavior" and did not involve violence].)

We conclude that it cannot be said that appellant is outside the "spirit" of the Three Strikes law to any degree. The trial court therefore did not abuse its discretion in finding appellant should not be treated as though he had only committed a single strike. Additionally, appellant was afforded leniency when the court struck the four 1-year prior prison term enhancements.

### 4. *Modification of Judgment and Amendment of Abstract of Judgment Warranted*

Respondent contends the judgment must be modified and the abstract of judgment corrected to reflect a $50 state penalty assessment and a $35 county penalty assessment. We agree.

The record reflects the court imposed a $50 laboratory fee but omitted any state or county penalty assessments. Accordingly, the judgment must be modified and the abstract of judgment corrected to reflect the imposition of

a $50 state penalty assessment and a $35 county penalty assessment. (See, e.g., *People* v. *Terrell* (1999) 69 Cal.App.4th 1246, 1256-1257 [82 Cal.Rptr.2d 231]; *People* v. *Martinez* (1998) 65 Cal.App.4th 1511, 1522 [77 Cal.Rptr.2d 492].)[4]

## DISPOSITION

The judgment is modified to reflect the imposition of a $50 state penalty assessment and a $35 county penalty assessment, and as modified, the judgment is affirmed. The superior court is directed to prepare an amended abstract of judgment to reflect these modifications.

Epstein, J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 13, 2000.

---

[4]We note this issue may be pending before our Supreme Court in various cases, including *People* v. *Parker* (1998) 67 Cal.App.4th 200 [78 Cal.Rptr.2d 868] review granted February 24, 1999, S074831; *People* v. *Baltazar*, review granted February 24, 1999, S075450; and *People* v. *Tillman*\* (Cal.App.), review granted April 21, 1999 S077360.

\*Reporter's Note: For Supreme Court opinion, see 22 Cal.4th 300.