Filed 4/12/16  P. v. Collins CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

ANTHONY BARTHOLOMEW COLLINS,

     Defendant and Appellant.

E062223

(Super.Ct.No. FWV1300175)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed with modifications.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant, Anthony Bartholomew Collins, and a companion, burglarized a residence, while observed by a neighbor who reported the burglary, then engaged in a brief high-speed chase, pursued by police, until defendant crashed his car into a pole. Defendant was convicted by jury of residential burglary (Pen. Code, § 459) and evading police (Veh. Code, § 2800.2), and, in a bifurcated proceeding, the court made true findings as to two prior burglaries, under the Strikes law (Pen. Code, § 667, subds. (b)-(i), as prior serious felonies (nickel priors) (Pen. Code, § 667, subd. (a)(1)), and as prison priors. (Pen. Code, § 667.5, subd. (b).) Defendant was sentenced to an aggregate term of 39 years to life, and appealed.

On appeal, defendant argues (1) the court abused its discretion in refusing to strike one of his strike convictions; (2) his sentence of 39 years to life constitutes cruel and unusual punishment; (3) the court erred in imposing consecutive terms for counts one and two; (4) the court erred in failing to award presentence conduct credit; (5) the court erred by staying rather than striking the enhancements for the prison priors; and (6) the abstract of judgment incorrectly reflects the statutory basis for the five-year enhancements. The People agree that defendant is entitled to presentence conduct credit, the court should have stricken the prison priors, and that the abstract must be amended. As modified, we affirm.

**BACKGROUND**

Because this is a sentencing appeal, a detailed recitation of the facts of the current offense is unnecessary.

2

On the afternoon of January 15, 2013, Anita Mora observed a white vehicle parked in front of the residence of her neighbors, Rachel and Rick Castro. The driver of the vehicle was a light skinned male, while the passenger was darker, either African American or Hispanic. Mora observed the passenger exit the vehicle, approach the front door of the Castro residence, and then return to the car a few minutes later. Defendant and Gardner then drove down the street where they parked the car, walked back to the Castro residence, and jumped over the side yard gate. The lighter-skinned man was carrying a backpack. Mora then called 911.

Inside, defendant and Gardner ransacked the Castro residence, stealing numerous items of jewelry, a watch, cash, and a backpack belonging to Rick Castro. They exited the house through the front door, and both were carrying backpacks. They headed in the direction of the vehicle.

Officer Vicent, responding to a broadcast based on the neighbor's report, was present when the two burglars ran to their vehicle. Defendant was the lighter-skinned of the two men, and both were carrying backpacks. As they ran across the street, Officer Vicent drove up. He observed the two men enter a white Envoy, with defendant, the lighter skinned individual, getting into the driver's seat, and Merle Gardner, the darker skinned individual, in the passenger seat. The officer pursued the defendant's vehicle, using his flashing lights and police siren, and broadcast the license plate number. Defendant did not stop, but continued to accelerate to speeds approaching 80 miles per

3

hour. The officer lost sight of defendant's vehicle, but later caught up and realized other officers had joined the pursuit.

Officer Layton was among the other responding officers, and activated his emergency lights and siren. Defendant did not stop; he continued to drive at excessive speeds (estimated at up to 85 to 90 miles per hour) through the neighborhood. Eventually, defendant lost control of his vehicle, and crashed into a light pole. Officer Layton approached the disabled vehicle and ordered the occupants to exit.

On the floorboard of the rear passenger seat, officers found a backpack. In defendant's pants pocket, officers found several jewelry items, including numerous rings and earrings, and currency. In each of the pockets of defendant's sweater there was one long sock, commonly worn by burglars to avoid leaving fingerprints. In the vehicle, police found Rick Castro's backpack, containing more jewelry, cash, and Rachel Castro's watch, which had been stolen from the Castro residence.[1] At the residence, a shoe print that matched defendant's shoe was found on the French doors that had been kicked open.

Defendant was charged with residential burglary (Pen. Code, §§ 459/460, count one) and evading police with wanton disregard for safety (Veh. Code, § 2800.2, count two). It was further alleged that defendant had two prior convictions for serious or violent felonies under the Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), two prior convictions for serious felonies (nickel priors) (Pen. Code, § 667, subd

---

[1] Although the record does not indicate what items were found in the backpack found in the vehicle, Ms. Castro testified that "[t]hey used [the husband's] backpack to fill it with my jewelry."

4

(a)(1)), and two prior convictions for which he had served separate prison terms (prison priors) (Pen. Code, § 667.5, subd. (b)).  A jury found defendant guilty of both counts.

In a bifurcated court trial, the trial court found true all allegations relating to defendant's prior convictions, denied a defense motion to invalidate his Los Angeles burglary conviction based on a *Boykin/Tahl*[2] violation, and to strike one of the strike allegations pursuant to Penal Code section 1385.  At sentencing, the court imposed an indeterminate term of 25 years to life for count one, a determinate term of four years for count two, and 10 years (five years each) for the two nickel priors.  The court stayed the one-year enhancements for the prison priors, and awarded no conduct credits to defendant.  Defendant appealed.

### DISCUSSION

1.    *The Trial Court Properly Denied Defendant's Romero Motion*.

Defendant argues that the trial court abused its discretion under Penal Code section 1385 by declining to strike one of his prior strike convictions.  We disagree.

Penal Code, section 1385, subdivision (a), authorizes a trial court to act on its own motion to dismiss a criminal action "in furtherance of justice."  This power "includes the ability to strike prior conviction allegations that would otherwise increase a defendant's sentence." (*People v. Garcia* (1999) 20 Cal.4th 490, 496.)

---

[2] Referring to *Boykin v. Alabama* (1969) 395 U.S. 238, and *In re Tahl* (1969) 1 Cal.3d 122.

5

A court's discretionary decision to dismiss or to strike a sentencing allegation under Penal Code section 1385 is reviewable for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 373.) The burden is on the appellant to affirmatively show in the record that error was committed by the trial court. (*People v. Alvarez* (1996) 49 Cal.App.4th 679, 694.) "'''"A decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'''" [Citation.]" (*People v. Philpot* (2004) 122 Cal.App.4th 893 (*Philpot*), 904-905; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 477.)

In deciding whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" (Pen. Code, § 1385, subd. (a)), or in reviewing such a ruling, the court in question "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) When the balance of these factors falls in favor of the defendant, a trial court not only may *but should* exercise the powers granted to it by the Legislature and grant a dismissal in the interests of justice. (*People v. Carmony, supra*, 33 Cal.4th at p. 375.) However, a defendant's age, considered alone, does not take

6

a defendant outside the spirit of the law.  (*People v. Strong* (2001) 87 Cal.App.4th 328, 332, 345.)

Thus, a trial court "abuses its discretion when it dismisses a prior conviction solely to accommodate judicial convenience, due to court congestion, because a defendant pleads guilty" (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 993), or dismisses due to a personal antipathy for the effect that the Three Strikes law would have on defendant (*People v. Dent* (1995) 38 Cal.App.4th 1726, 1731), or takes little or no account of the particulars of defendant's background, character and prospects.  (*People v. Thornton* (1999) 73 Cal.App.4th 42, 49.)

The fact that another, lesser, term would have fulfilled the Three Strikes law does compel a conclusion that the trial court abused its discretion.  In other words, our task is not to review the record to determine whether the court could have imposed another sentence that might have been proper; we review the sentence before us *for error* amounting to an abuse of discretion.

In defendant's case, despite twice being convicted and sentenced for residential burglaries, and having been subjected to probation and parole violations, defendant has not learned his lesson.  His conduct more closely resembles the "revolving door" defendant for whom the Three Strikes law was intended.  (*People v. Stone* (1999) 75 Cal.App.4th 707, 717; see also, *People v. Carmony, supra,* 33 Cal.4th at p. 379.)  "As such, the court's decision not to strike [defendant's] priors was neither irrational nor

arbitrary and does not constitute an abuse of its discretion." (*People v. Carmony*, at p. 379.)

2. *The Sentence of 39 Years-to-Life Does Not Constitute Cruel and Unusual Punishment.*

Defendant argues that his sentence of 39 years-to-life constitutes cruel and unusual punishment. He focuses his argument on the assertion that the punishment imposed was grossly out of proportion to his crimes, his culpability, and his past criminal behavior, which he describes as "relatively modest." We disagree.

Under both the Eighth Amendment of the United States Constitution, as well as under the California Constitution (art. I, § 17), a punishment is cruel and unusual if it is disproportionate to the severity of the crime for which it is inflicted. (*Rummel v. Estelle* (1980) 445 U.S. 263, 271 [100 S.Ct. 1133, 63 L.Ed.2d. 382]; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1278.) Under the Eighth Amendment, three factors may be relevant to the determination: (a) the gravity of the offense and the harshness of the penalty; (b) the sentences imposed on other criminals in the same jurisdiction; and (c) the sentences imposed for the commission of the same crime in other jurisdictions. (*Ewing v. California* (2003) 538 U.S. 11, 22.)

Under the California Constitution, a punishment is considered excessive if it is so disproportionate to the crime for which it is inflicted if it shocks the conscience and offends fundamental notions of human dignity. (*In re Lynch* (1972) 8 Cal.3d 410, 424.) To determine whether a particular sentence is disproportionate, courts examine the nature

8

of the offense and/or the offender with particular regard to the degree of danger both present to society.  (*Id.,* at pp. 410, 425.)  However, long sentences are not necessarily cruel or unusual.

The United States Supreme Court has ruled that a sentence of 25 years to life under California's Three Strikes law does not violate the Eighth Amendment.  (*Ewing v. California, supra,* 538 U.S. at p. 30; *Lockyer v. Andrade* (2003) 538 U.S. 63, 77.)  In *Ewing,* the court affirmed a sentence of 25 years to life for felony grand theft, while in *Andrade*, the court affirmed a sentence of two consecutive 25-years-to-life terms for petty theft with a prior, using the disproportionality test.

California appellate courts have consistently found the Three Strikes law is not cruel and unusual punishment.  (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 359.)  The rationale is that society is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies; if increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time.  (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1432; see also, *People v. Ayon* (1996) 46 Cal.App.4th 385, 399, disapproved on other grounds in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn.10.)

Defendant argues that his troubled background and his desire to be a productive citizen and good parent, as well as a "potential for him to succeed," are reasons to base a finding that the sentence imposed was cruel and unusual.  However, his stated desires and potential are belied by his history.  From 1999 onward, he has chosen criminal activity

9

over solid citizenship, resulting in two separate prison terms for separate serious or violent felonies, and various probation and parole violations, before committing the offenses that led to his current term. Considering that he has a child with special needs, and other children in the household in need of a positive role model, his volitional choice to reoffend, while on parole for a prior felony, speaks volumes about what a caring, responsible and productive man he is, and his admirable character.

The sentence imposed was not disproportionate to defendant's culpability, within the meaning of the prohibition against cruel and unusual punishment.

3. *The Trial Court Properly Imposed Consecutive Terms for Counts One and Two.*

Defendant argues that the trial court had authority to run count two concurrent with count one, and that its misunderstanding of its discretionary power requires remand for resentencing. We disagree.

Penal Code section 667, subdivision (c)(6), provides that if "there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." Penal Code section 1170.12, subdivisions (a)(6) and (7), also allows concurrent sentences for offenses committed on the "same occasion." Consecutive sentences are not mandatory under Penal Code section 667, subdivision (c)(7) if all of the serious or violent current felony convictions are

10

"committed on the same occasion" or "arise[e] from the same set of operative facts." (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.)

"[T]he phrase 'same set of operative facts' has been judicially interpreted in collateral estoppel and election of remedies cases to refer to those facts which prove a criminal or civil defendant's liability for a particular wrongful act." (*People v. Durant* (1999) 68 Cal.App.4th 1393, 1405.) "In applying this definition to a particular case, the nature and elements of the current charged offense become highly relevant." (*Ibid.*)

The phrase "same occasion" presents additional analytical problems. The analysis for determining whether Penal Code section 1170.12, subdivisions (a)(6) and (7), or section 667, subdivisions (c)(6) and (7) require consecutive sentencing is not coextensive with the test for determining whether section 654 permits multiple punishment. (*People v. Lawrence* (2000) 24 Cal.4th 219, 226.) Penal Code section 654 is irrelevant to the question whether multiple current convictions are sentenced concurrently or consecutively under the Three Strikes law, because section 654 does not allow *any* multiple punishment, whether concurrent or consecutive, and the analyses performed under the two statutes are entirely separate. (*People v. Deloza, supra,* 18 Cal.4th at pp. 594-595.)

The phrase "committed on the same occasion" refers to at least a close temporal and spatial proximity between two events. (*People v. Deloza, supra,* 18 Cal.4th at p. 594.) Thus, the acts of robbing several people present at a furniture store, without interruption, were committed on the same occasion, and the trial court retained discretion

11

to impose either concurrent or consecutive sentences. (*Id.,* at p. 596.) However, where a defendant flees the scene of his first crime, and commits a second offense shortly thereafter and a short distance away, the crimes were not committed on the same occasion. (*People v. Lawrence, supra,* 24 Cal.4th at p. 228.) "We do not believe it was intended that the mandatory consecutive-sentencing provision of the Three Strikes law not apply to the commission of different crimes perpetrated against different groups of victims merely because the later crimes occurred while the defendant was still in flight from the initial crime scene." (*Id*., at p. 229.)

A burglary is complete upon the slightest partial entry of any kind, with the requisite intent, even if the intended larceny is neither committed nor attempted. (*People v. Davis* (1998) 18 Cal.4th 712, 718; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 185.) Although the felony murder rule has led to decisions extending the scope of a burglary until the burglar has reached a reached a point of temporary safety (see *People v. Thongvilay* (1998) 62 Cal.App.4th 71, 78), in non-homicide cases, the commission of a burglary and the subsequent escape of the burglar never coincide. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1169, fn. 13 ["We note that asportation is not an element of burglary. Thus, the commission of the burglary and the escape will never coincide."].)

The case of *People v. Dugas* (1966) 242 Cal.App.2d 244, is instructive. There, the defendant entered the victim's apartment while the victim was not present. However, the victim returned to the residence while defendant was already inside, at which point the defendant robbed the victim. The reviewing court held that because the burglary was

12

already complete when the victim appeared, the robbery was an afterthought. Thus, the two crimes did not comprise one indivisible transaction. (*Dugas, supra,* 242 Cal.App.2d at pp. 250-251 [disapproved on a different point in *Prudhomme v. Superior Court* (1970) 2 Cal.3d 320, 327, fn. 11].)

A similar result obtained in *People v. Green* (1985) 166 Cal.App.3d 514, where the defendant committed burglary, residential robbery, and forcible rape in concert. The evidence showed the defendant and his companions entered a residence with intent to commit larceny, unaware that the victim was present. The intruders raped the victim and then demanded to know where money, guns and drugs were located. (*Id.,* at pp. 516-517.) The reviewing court affirmed the trial court's implied determination that the burglary and robbery did not constitute an indivisible course of conduct. (*Id.,* at p. 518.)

Here, the burglary was complete before the defendant and his companion left in the vehicle, to be pursued by police. The two crimes are not based on the same set of operative facts, or the same intent. The intent underlying the burglary was to commit larceny, where the intent for the evading count was to elude police. Although committed near in time, the two crimes were not committed on the same occasion and did not arise from the same set of operative facts.

Thus, the provisions of Penal Code sections 667, subdivisions (c) (6) and (7), and 1170.12, subdivisions (a)(6) and (7), require consecutive sentences.

4. *Defendant is Entitled to Additional Presence Credit*

Defendant argues the trial court erred in failing to award him presence conduct credit pursuant to Penal Code section 4019. The People agree that defendant was entitled to presence credit, as do we.

By their terms, Penal Code sections 667, subdivision (c)(5) and 1170.12, subdivision (a)(5) do not address presence conduct credits. (*People v. Thomas* (1999) 21 Cal.4th 1122, 1125; *People v. Hill* (1995) 37 Cal.App.4th 220, 225.) Those statutes refer to "*post*sentence conduct credits . . . awarded pursuant to Article 2.5, (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3.' [Citation.]" (*People v. Thomas, supra,* 21 Cal.4th at p.1125.) The circumstance that a defendant is sentenced to an indeterminate sentence does not preclude the earning of presence conduct credit pursuant to Penal Code section 4019. (*People v. Duff* (2010) 50 Cal.4th 787, 793, citing *Philpot, supra,* 122 Cal.App.4th 893, 908;[3] see also *People v. Thomas, supra,* 21 Cal.4th at p. 1125.)

As Penal Code section 4019 on its face grants presence conduct credit to all defendants, and neither that statute nor any other creates an exception applicable to defendants sentenced to indeterminate life sentences, defendant is entitled to presence

---

[3] The Supreme Court in *Duff*, however, concluded defendant was not entitled conduct credit because of Penal Code section 2933.2, subdivision (c), denying conduct credits to persons convicted of murder, even if the murder sentence were stayed. (*Duff, supra,* 50 Cal.4th at p. 795.)

14

conduct credit.  (*People v. Brewer* (2011) 192 Cal.App.4th 457, 462-464, citing *Philpot, supra,* 122 Cal.App.4th 893.)

Defendant is entitled to 646[4] days of actual custodial time served (Pen. Code, § 2900.5), plus conduct credits in the amount of 646 days.  (Pen. Code, § 4019, subds. (b) & (c).)  The judgment is modified accordingly.

5.	*The Prison Priors Must Be Stricken Where the Same Convictions Formed the Basis for the Strikes.*

Defendant argues that the trial court improperly imposed and stayed the enhancements relating to his prison priors, pursuant to Penal Code section 667.5, subdivision (b).  The People agree that the court improperly stayed the enhancements, and that they must be stricken.  We agree.

California law makes plain an intent that certain recidivism be severely punished. (*People v. Jones* (1993) 5 Cal.4th 1142, 1152.)  The sentence imposed under the strikes law, with the added enhancements under Penal Code section 667, subdivision (a)(1), fulfills this intent.  Adding the five-year enhancement separately to the third strike sentence for each new serious felony conviction is not inconsistent with this intent. (*People v. Williams* (2004) 34 Cal. 4th 397, 404.)  But neither the voters nor the Legislature specified that enhancements under Penal Code sections 667 and 667.5 were

---

**4** The trial court orally awarded 647 days credit for presentence custodial time, but the actual amount should have been 646.

both to apply to the same prior offense.  (*People v. Jones, supra,* 5 Cal.4th at pp. 1152-1153.)

Thus, "'"when multiple statutory *enhancement* provisions are available for the same prior offense, one of which is a [Penal Code] section 667, [subdivision] (a)(1) enhancement, the greatest enhancement, but only that one, will apply.'  [Citation.]" (*People v. Dotson* (1997) 16 Cal. 4th 547, 555-556.)

Here, the trial court apparently recognized that it would be inappropriate to impose the one-year enhancement, but it chose to stay, rather than strike, the prison prior enhancements.  "Once the prior prison term is found true within the meaning of [Penal Code] section 667.5, [subdivision] (b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken."  (*People v. Langston* (2004) 33 Cal. 4th 1237, 1241, citing *People v. Jones* (1992) 8 Cal.App.4th 756, 758; *People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1122–1123.)

Because there is no authority to stay an enhancement for a prison prior, we direct that they be stricken.

6.	*The Abstract of Judgment Must Be Amended.*

Defendant argues that the abstract must be amended to correct a clerical error.  On the abstract of judgment for the determinate term, on the lines relating to the enhancements, the document reflects the imposition of two five-year terms for allegations found true under Penal Code section 667.5, subdivision (b).  Instead, the two five-year

16

enhancements were imposed pursuant to Penal Code section 667, subdivision (a)(1). The People agree that the abstract should be amended. We agree.

The abstract of judgment constitutes the commitment and is the order sending the defendant to prison, and the process and authority for carrying the judgment and sentence into effect; no other warrant or authority is necessary to justify or require its execution. (Pen. Code, § 1213; *People v. Mitchell* (2001) 26 Cal.4th 181, 185, citing *In re Black* (1967) 66 Cal.2d 881, 890.) Accuracy is essential in a document that prescribes the execution of sentence, which is provided to Criminal Investigation and Identification. (Pen. Code, § 1213, subd. (a).)

This court has the authority to correct clerical errors at any time. (*People v. Mitchell, supra*, 26 Cal.4th at pp.186-187.) We direct the clerk of the court to amend the abstract to reflect that the five-year enhancements were imposed pursuant to Penal Code section 667, subdivision (a)(1).

### DISPOSITION

The sentence is modified to reflect that defendant served 646 days in presentence local custody, for which he is entitled to 646 days of conduct credit pursuant to Penal Code section 4019. It is further modified to strike the prison priors imposed pursuant to Penal Code section 667.5, subdivision (b), and to amend the abstract of judgment to reflect that the five-year enhancements were imposed pursuant to Penal Code section 667, subdivision (a)(1). The clerk is directed to amend the sentencing minutes and the

17

abstract of judgment to reflect these corrections.  In all other respects, the judgment is

affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

HOLLENHORST

J.

McKINSTER

J.

18