Filed 8/30/23  P. v. Moya CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E078578 |
| v. | (Super.Ct.No. FWV19003936) |
| RANDY RAMONE MOYA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Knish, Judge.  Affirmed.

Law Office of Alissa L. Bjerkhoel and Alissa L. Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found that defendant and appellant Randy Ramone Moya sexually assaulted a child on multiple occasions when she was 11 or 12 years old, and that he had

1

a prior strike conviction. The trial court declined to dismiss the strike prior finding under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and sentenced Moya to a total of 150 years to life.

In this appeal, Moya raises three claims: (1) the trial court abused its discretion in denying his *Romero* motion by failing to weigh mitigating factors as required by section 1385, as amended by Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) (Senate Bill 81); (2) his sentence constitutes cruel and unusual punishment under the United States and California Constitutions; and (3) the trial court failed to instruct the jury on certain lesser included offenses. We find no merit in the first two of these arguments, and find no prejudicial error in the jury instructions, so we affirm the judgment.

## I. FACTS

In December 2019, then-12-year-old Jane Doe (born Nov. 2007) lived in a house with her mother, father, her two younger siblings, her paternal grandmother, her paternal aunt, her cousin (the paternal aunt's daughter), and Moya, who was 34 years old at the time. Doe considered Moya an uncle, and Moya has called Doe his niece, but he is more precisely the paternal aunt's ex-boyfriend and the father of Doe's cousin. Doe and her cousin did not have a bedroom, normally sharing a bunk bed that had been placed in the living room. Moya did not always spend the night, but when he did, he slept on a couch in the living room, with Doe and her cousin. Before the events of this case, Doe considered Moya someone she could confide in and someone she "looked up to."

On the night of December 3, 2019, Doe's cousin was sleeping with their grandmother in her bedroom, and Doe was getting ready to sleep in the bunk bed. Doe was wearing a "hoodie" and leggings. She was lying in bed, facing the wall, when she heard the front door of the house, which opened into the living room, open and close. Moya came up to her and told her get up because he wanted to show her something. After Doe verbally resisted getting out of bed, Moya pulled her up by her hood, "grabbed" her by the arm and legs, and put her on the couch in a semi-seated position. Moya then pulled Doe's pants and underwear down, despite her efforts to push him off. He then vaginally penetrated her, first with fingers and then with his penis. While Moya was doing so, he told Doe that if she told anybody, he would kill her and her whole family.

A short time later, Doe's mother came into the living room and saw Moya on top of Doe, both of them with pants down, and Moya moving between Doe's legs. Doe's mother started hitting Moya, but he did not stop immediately. Doe's mother began swearing at Moya and calling for Doe's father, at which point Moya got up, gathered his things, and ran out of the house. Doe's mother grabbed Doe, took her to her bedroom, and woke up Doe's father. Doe's father tried to pursue Moya, but did not catch him. Doe's mother called the police.

Doe revealed that Moya had sexually assaulted her before; she initially told police that he had done so three or four previous times, beginning around November 2019, but at trial she testified that it was five or six times, beginning in July or August 2019. Each

3

of the prior assaults had also happened on the couch in the living room, late at night. Sometimes, Moya had picked Doe up off her bed and put her on the couch while she was asleep. Each time, Doe had tried to stop Moya by pushing or kicking him off of her and telling him to stop. Sometimes that got him to stop, sometimes it did not. Doe did not scream for help because Moya would cover her mouth. He also used threats of violence to keep her from telling anyone. Doe never told anyone about the assaults because she was afraid Moya would kill her family.

Moya was arrested and interviewed by police by the next morning. Moya initially denied any sexual contact with Doe. He said he was not having sex with Doe when her mother walked in, but rather "fixing the carpet." But he changed his story and admitted to vaginally penetrating Doe with his penis "just like, like a little bit." He claimed, however, that he did so only because Doe insisted, stating: "I was trying to leave. She just said, 'Come on, please, please,' and 'I'm gonna tell that you raped me.'" He conceded that they had sexual contact not only on December 3, 2019, but also one other time, a day or two before. He expressed that he was "sorry" for what he did, though he continued to insist that Doe was a willing participant ("She just, she gave it up to me . . . .").

Forensic DNA analysis showed Doe's DNA on a swab taken from Moya's scrotum, and Moya's DNA was present on swabs taken from Doe's genitals and anus.

At trial, during a discussion of the jury instructions out of the presence of the jury, defense counsel requested that the jury be instructed on "261.5" as a lesser included

4

offense, referring to the Penal Code section for statutory rape, section 261.5.  The trial court denied the request, concluding that section 261.5 described only a lesser-related offense, on which the court could not instruct without the agreement of both sides, and the prosecution did not agree.  The jury was instructed on simple assault as a lesser included offense as to all counts.

The jury found Moya guilty as charged, convicting him on five counts of aggravated sexual assault of a child.  (Pen. Code,[1] § 269, subd. (a)(1) (rape, § 261, subds. (a)(2) & (6), counts 1-4) & (5) (sexual penetration, § 289, subd. (a), count 5).)  In a bifurcated proceeding, the jury found true the allegation that Moya had a prior strike conviction, for a burglary (§ 459) from 2013.  The trial court denied Moya's *Romero* motion and sentenced him to 30 years to life—15 years to life, doubled by the strike—for each of the five counts, to be served consecutively, resulting in a total sentence of 150 years to life.

## II.  DISCUSSION

### A.  *Senate Bill 81*

Moya contends that the trial court abused its discretion in denying his *Romero* motion because it failed to conduct the analysis in accordance with recent amendments to section 1385 made by Senate Bill 81.  This argument fails because those amendments apply to enhancements, but not to prior strike convictions under the Three Strikes law.

---

[1]  Undesignated statutory references are to the Penal Code.

5

Whether Senate Bill 81's amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation, which we review de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)

Under section 1385, subdivision (a), the trial court "may . . . in furtherance of justice, order an action to be dismissed." This authority includes the power to "strike or vacate an allegation or finding under the three strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . ." (*People v. Williams* (1998) 17 Cal.4th 148, 158.)

Effective January 1, 2022, Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike *enhancements* from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674 (italics added); see § 1385, subd. (c).) Under the amended section 1385, a sentencing court must "consider and afford great weight to evidence offered by the defendant to prove" enumerated mitigating circumstances. (§ 1385, subd. (c)(2).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the *enhancement*, unless the court finds that dismissal of the *enhancement* would endanger public safety." (*People v. Sek*, *supra*, at p. 657 (italics added).)

Thus, "[s]ubdivision (c) of section 1385 expressly applies to the dismissal of an 'enhancement.'" (*People v. Burke* (2023) 89 Cal.App.5th 237, 243 (*Burke*); see § 1385, subd. (c)(1).) "Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning." (*People v. Carter* (1996) 48

6

Cal.App.4th 1536, 1540.)  The term "enhancement" has a well-established technical meaning in California law, which does not include the sentencing consequences under the Three Strikes law for a defendant who has prior strike convictions.  (*People v. Williams* (2014) 227 Cal.App.4th 733, 744 ["The Three Strikes law is a penalty provision, not an enhancement.  It is not an enhancement because it does not add an additional term of imprisonment to the base term"]; see also *Romero*, *supra*, 13 Cal.4th at p. 527 ["The Three Strikes law . . . articulates an alternative sentencing scheme for the current offense rather than an enhancement"].)  "The Legislature did not otherwise define the word 'enhancement' in section 1385."  (*Burke*, *supra*, at p. 243.)  "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law."  (*Ibid.*)  "Because the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history cited by defendant."[2]  (*Ibid.*)

---

[2]  As noted by the court in *Burke*, "much of the legislative history [of Senate Bill 81] is inconsistent with this plain language and suggests that the term enhancement includes the Three Strikes law."  (*Burke*, *supra*, 89 Cal.App.5th at p. 243, fn. 3; but see Assem. Com. on Public Safety, Rep. on Sen. Bill No. 81 (2021-2022 Reg. Sess.), June 28, 2021, pp. 5-6 [discussing established legal meaning of "enhancement" and stating: "The presumption created by this bill applies to enhancements, but does not encompass alternative penalty schemes"].)  "To the extent this history reflects a legislative intent different than that expressed in the plain language of the bill, that is a matter for the Legislature to correct."  (*Burke*, at p. 243, fn. 3.)

The People requested that we take judicial notice of several pieces of the legislative history of Senate Bill 81.  "'A motion for judicial notice of published legislative history . . . is unnecessary. [Citation.]  "Citation to the material is sufficient."'"  (*Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 290, quoting *Wittenburg v.*

*[footnote continued on next page]*

7

In sum, "[t]he plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke*, *supra*, 89 Cal.App.5th at p. 244.) Thus, the trial court was not required to consider the factors listed in section 1385, subdivision (c)(2) in deciding whether to dismiss Moya's prior strike conviction. Moya has not argued that the trial court erred in performing the traditional analysis applicable to prior strikes. (See *Williams*, *supra*, 17 Cal.4th at p. 161.) He therefore has not demonstrated any abuse of discretion in the court's decision to deny his *Romero* motion.

B. *Cruel and Unusual Punishment*

Moya contends that his sentence of 150 years to life constitutes cruel and unusual punishment under the United States and California Constitutions. The People argue (and Moya does not dispute) that the state constitutional claim was forfeited by failure to raise it in the trial court. The People further argue that Moya's sentence is neither cruel nor unusual, under either the state or federal law. We exercise our discretion to consider the forfeited state constitutional claim to forestall a petition for writ of habeas corpus based on a claim of ineffectual counsel. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126.) On the merits, we find no violation of Moya's rights.

---

*Beachwalk Homeowners Assn.* (2013) 217 Cal.App.4th 654, 665, fn. 4.) Thus, we treat the People's request for judicial notice as citations to those materials and deny the request for judicial notice.

The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (U.S. Const., 8th Amend.) "The concept of proportionality is central to the Eighth Amendment," and cases addressing it "underscore the essential principle that, under the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes." (*Graham v. Florida* (2010) 560 U.S. 48, 59 (*Graham*).) Similarly, the California Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." (Cal. Const., art. I, § 17.)

Although the parties present the issue as requiring separate analysis under the United States versus the California Constitutions, the framework is by and large the same. Under the Eighth Amendment, "challenges to the length of term-of-years sentences" are reviewed by first "comparing the gravity of the offense and the severity of the sentence." (*Graham*, *supra*, 560 U.S. at pp. 59-60, discussing *Harmelin v. Michigan* (1991) 501 U.S. 957.) "'[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." (*Id.* at p. 60.)

Similarly, "[u]nder the California Constitution, we use a three-pronged test to determine whether a particular sentence is disproportionate to the offense for which it is

imposed.  First, we examine 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.'  (*In re Lynch* (1972) 8 Cal.3d 410, 425 [(*Lynch*)].)  Second, we compare the punishment imposed with punishments prescribed by California law for more serious offenses.  (*Id.* at pp. 426-427.)  Third, we compare the punishment imposed with punishments prescribed by other jurisdictions for the same offense.  (*Id.* at pp. 427-429.)"  (*People v. Em* (2009) 171 Cal.App.4th 964, 972; see also *People v. Garcia* (2017) 7 Cal.App.5th 941, 952 [describing the "three analytical techniques" under *Lynch*].)  A lengthy sentence is cruel and unusual under the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."  (*Lynch*, *supra*, at p. 424.)

Thus, under both the federal and the state frameworks, we consider the gravity or nature of the offense and engage in a comparative analysis.  The two differ in that, under the federal inquiry, we proceed to the comparative analysis only if the "'threshold'" analysis concerning the gravity of the offense "'leads to an inference of gross disproportionality'" (*Graham*, *supra*, 560 U.S. at p. 60), whereas the state inquiry always involves the comparative analysis.

"Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment."  (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496 (*Martinez*).)  Additionally, the doctrine of separation of powers requires significant deference to

10

matters "which are uniquely in the domain of the Legislature," which include "the definition of crime and the determination of punishment." (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*Martinez*, at p. 494.)

Here, although the sentence is severe, so too is the gravity of the offense. Moya raped a child on multiple occasions when she was eleven and twelve years old. He used his position of trust in the family to gain access to her, and he used force (covering her mouth) and threats of violence to keep her from calling for help. He used threats of violence to prevent her from telling anyone about the assaults afterward. Even someone without a criminal history who commits such actions is a grave danger to society. (See *People v. Gonzales* (2001) 87 Cal.App.4th 1, 17 ["The lack of a significant prior criminal record is not determinative in a cruel and unusual punishment analysis"].) Whatever arguably mitigating factors might also have been present[3], and even if Moya's recidivism is not considered, the comparison between the crime and the sentence does not "'lead[] to an inference of gross disproportionality.'" (*Graham*, *supra*, 560 U.S. at p. 60.) Moreover, although the present offenses are Moya's first convictions for sexual offenses, he has a lengthy criminal history, including a prior strike conviction. "'Recidivism in the

---

[3] Moya emphasizes that he had no prior history of sexual offenses, he expressed remorse after he was caught, he had himself been molested as a child, and he had "experienced several mental and intellectual disorders throughout his life . . . as well as drug addiction," including "using methamphetamine at the time of the offenses on December 3, 2019, which altered his ability to think rationally."

11

commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses.'" (*People v. Stone* (1999) 75 Cal.App.4th 707, 715; see also *People v. Cooper* (1996) 43 Cal.App.4th 815, 823 ["Under the three strikes law, defendants are punished not just for their current offense but for their recidivism"].) Moya's federal claim therefore fails at the threshold stage.

We disagree with Moya that *In re Rodriguez* (1975) 14 Cal.3d 639 (*Rodriguez*) is "instructive" and supports the conclusion that his punishment is constitutionally disproportionate to his crime. In *Rodriguez*, our Supreme Court concluded that the 22 years the defendant had served of a one year to life sentence was unconstitutional as applied. (*Id.* at p. 648.) The circumstances of *Rodriguez*, however, were different from those of this case. Among other things, Rodriguez was found to have "fondled" a child's "private parts" on a single occasion, and there was no evidence of sexual penetration. (*Id.* at p. 643, fn. 5.) Although Rodriguez had a past history of sex crimes, the court found his "personal history reflected none of the characteristics associated with vicious criminality."[4] (*Id.* at p. 644, fn. 6.) In contrast, Moya had a prior strike conviction, in addition to other, lesser offenses, and he was convicted of raping a child on multiple occasions, "conduct that the Legislature has since made clear is more heinous." (*People*

---

[4] Rodriguez "was 26 when he committed the offense. He had an I.Q. of about 68, and was functionally illiterate and unskilled." (*Rodriguez*, *supra*, 14 Cal.3d at p. 644, fn. 6.) He had been "arrested at age 19 and charged with attempted statutory rape, and two years later was arrested for molesting a child." (*Ibid.*) Instead of a prison sentence, however, Rodriguez was confined to a psychiatric hospital, from which he had escaped before committing the crime that resulted in his life sentence. (*Ibid.*)

*v. Baker* (2018) 20 Cal.App.5th 711, 726 [distinguishing *Rodriguez* on similar grounds]; compare § 288, subd. (a) [sentence of 3, 6, or 8 years] with § 269, subds. (b) [mandating sentence of 15 years to life] & (c) [requiring consecutive sentence for crimes involving the same victim on separate occasions], § 667, subd. (e)(1) [doubling minimum term if defendant has one prior strike conviction].)

A comparative analysis also does not help Moya. "Along a spectrum ranging from murder, mayhem, and torture on one end to petty theft on the other, 'lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable.'" (*People v. Baker* (2018) 20 Cal.App.5th 711, 724-725.) "It is well within the prerogative of the Legislature to determine that sex offenses against young children are deserving of longer sentences than sex offenses against adults or nonsex offenses." (*People v. Gomez* (2018) 30 Cal.App.5th 493, 502.) In the context of sex crimes against children, California courts have repeatedly found no constitutional infirmity in sentences of similar magnitude to Moya's, even in the absence of some factors present here that exacerbate the severity of Moya's offenses, including recidivism and the use of force or threats. (E.g., *People v. Johnson* (2023) 88 Cal.App.5th 487, 494, 506-507, review granted, May 17, 2023, S279198 disapproved on other grounds by *People v. Catarino* (2023) 14 Cal.5th 748 [32 years plus 135 years to life; no force or threats, no criminal record, recidivism test showed below-average risk of reoffense]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 530 [129 year sentence; defendant had no prior criminal record, suffered from "mental impairment" at the time the crimes were committed].) Most of the

California cases Moya cites as examples of "significantly shorter sentences" for "worse sexual offenses" than his would not have been shorter sentences at all, had they been doubled for a prior strike as Moya's was.  (E.g. *People v. Caparaz* (2022) 80 Cal.App.5th 669, 672 [90 years to life]; *People  v. Thomas* (2017) 15 Cal.App.5th 1063, 1066-1068 [135 years to life]; *People v. Noriega* (2015) 237 Cal.App.4th 991, 993 [135 years to life] *People v. Guido* (2005) 125 Cal.App.4th 566, 569 [90 years to life]; *People v. Bestelmeyer, supra*, 166 Cal.App.3d at pp. 522-523, 532 [129 years]; but see *People v. Foss* (2007) 155 Cal.App.4th 113, 116-117 [30 years to life].)  And Moya concedes that comparison of his punishment with punishment for the same offenses in other states "does not weigh in favor of a finding that [his] punishment is cruel or unusual."

In short, to the extent there is any arguable degree of disproportionality in Moya's sentence, it does not rise to the level of "shock[ing] the conscience" or "offend[ing] fundamental notions of human dignity." (*Lynch*, *supra*, 8 Cal.3d at p. 424.)  This is not one of those "rarest of cases" in which we could "declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*Martinez*, *supra*, 76 Cal.App.4th at p. 494.)  Moya's contention that he has been subjected to cruel and unusual punishment is without merit.

C. *Lesser included offenses*

Moya contends that the trial court prejudicially erred by failing to instruct the jury on certain lesser included offenses.  We disagree.  Sexual penetration of a minor (§ 289, subd. (j)) is not a lesser included offense of aggravated sexual assault of a child by sexual

penetration (§ 269, subd. (a)(5), count 5), and section 261.5, subdivision (d), is not a lesser included offense of aggravated sexual assault of a child by rape (§ 269, subd. (a)(1), counts 1 through 4).  The trial court did err by failing to instruct on section 261.5, subdivision (c), which is a lesser included offense of section 269, subdivision (a)(1).[5]  Nevertheless, we find the error harmless, as there is no reasonable probability that it affected the outcome.

"A trial court must instruct on all lesser included offenses supported by substantial evidence."  (*People v. Duff* (2014) 58 Cal.4th 527, 561.)  This obligation arises "whenever there is evidence in the record from which a reasonable jury could conclude the defendant is guilty of the lesser, but not the greater, offense."  (*Ibid.*)  "'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed."  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)

We review de novo whether the trial court erred by failing to instruct on a lesser included offense.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)  We determine whether any error was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818.  (See *Breverman*, *supra*, 19 Cal.4th at pp. 165, 169 [failure to instruct on lesser included offense is error of

---

[5]  Moya's trial counsel requested an instruction on "[section] 261.5," without specifying a subdivision, and in initial briefing on appeal his appellate counsel did not raise section 261.5, subdivision (c), as a possible lesser included offense of section 269, subdivision (a)(1).  We raise the issue ourselves to forestall the need to address it on habeas (*People v. Williams*, *supra*, 78 Cal.App.4th at p. 1126), having afforded the parties an opportunity to submit supplemental briefing.

California law alone and therefore subject to state standards of reversibility].) Under this standard, the failure to instruct on a lesser included offense "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Breverman*, at p. 165.) In applying this standard, we focus "not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration." (*Id.* at p. 177 (italics omitted).) We may consider, "among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability of the error of which the defendant complains affected the result." (*Ibid.*, italics omitted.)

To determine whether one crime is necessarily included in another, courts "apply either the elements test or the accusatory pleadings test." (*People v. Shockley* (2013) 58 Cal.4th 400, 404 (*Shockley*); see *People v. Robinson* (2016) 63 Cal.4th 200, 207 (*Robinson*).) "'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.'" (*Shockley*, *supra*, at p. 404; see also *People v. Gonzalez* (2018) 5 Cal.5th 186, 197 ["Under the elements test, one offense is another's 'lesser included' counterpart if all the elements of the lesser offense are *also* elements of the greater offense"].) Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.'" (*Shockley*, *supra*, at p. 404.) "Consistent with the primary function of the

accusatory pleading test . . . we consider *only* the pleading for the greater offense." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1036.) "When, as here, the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court must rely on the statutory elements to determine if there is a lesser included offense." (*Robinson*, *supra*, at p. 207; *Shockley*, at p. 404.)

Section 289, subdivision (j) provides: "Any person who participates in an act of sexual penetration with another person who is under 14 years of age and who is more than 10 years younger than he or she shall be punished by imprisonment in the state prison for three, six, or eight years." Section 269, subdivision (a)(5), with which Moya was charged in count 5, requires only a seven-year age difference between the defendant and the victim. Thus, section 289, subdivision (j) is not a lesser included offense of section 269, subdivision (a)(5) under the elements test.

The accusatory pleading test yields the same result, that section 289, subdivision (j), is not a lesser included offense of section 269, subdivision (a)(5). The information alleges only that Moya was "7 and more years older than the victim"; there is no allegation that the victim was more than 10 years younger than Moya.

Relying on *People v. Ortega* (2015) 240 Cal.App.4th 956 (*Ortega*), Moya argues that we should apply an "'expanded' accusatory pleading test", and look not only to the pleading document, but also the preliminary hearing transcript to establish for purposes of the accusatory pleading test that Moya is more than 10 years older than Doe. We decline to do so. The three published decisions that have cited *Ortega* have each rejected

17

its reasoning as inconsistent with *People v. Montoya*, *supra*, 33 Cal.4th at p. 1036, and many other Supreme Court cases "stating that the accusatory pleading test looks solely to the language of the pleading itself." (*People v. Munoz* (2019) 31 Cal.App.5th 143, 158; accord *People v. Alvarez* (2019) 32 Cal.App.5th 781, 787; *People v. Macias* (2018) 26 Cal.App.5th 957, 964.) We agree that we are bound to consider "*only* the pleading for the greater offense" when applying the accusatory pleading test. (*People v. Montoya*, *supra*, 33 Cal.4th at p. 1036; *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 456.)

In his reply brief, Moya observes that the original complaint in the case "noted" Moya's birthdate, and argues that this is an alternative basis to find that the accusatory pleading test was satisfied. Moya's birthday, however, is only noted below the signature of the district attorney in a footer, along with Moya's name, booking number, and criminal identification and information ("CII") number. His birthdate is not included in the allegations of the substantive offenses. Moya cites no authority, and we are aware of none, indicating that we may use a birthdate included in a caption or footer of a charging document (let alone a charging document superseded by a later-filed information) in applying the accusatory pleading test. Under the accusatory pleading test, even enhancement allegations or alternative sentencing schemes that are alleged with respect to an offense cannot be considered part of an accusatory pleading for purposes of identifying lesser included offenses. (*People v. Wolcott* (1983) 34 Cal.3d 92, 96; *People v. Woods* (2015) 241 Cal.App.4th 461, 473, 480, 482; *People v. Bragg* (2008) 161

18

Cal.App.4th 1385, 1398.) We are not persuaded that information set out only in a caption or footer may be considered part of an accusatory pleading for purposes of determining a lesser included offense.

For similar reasons, section 261.5, subdivision (d), is not a lesser included offense of section 269, subdivision (a)(1), the offense charged against Moya in counts 1 through 4. Section 261.5, subdivision (d), requires that the defendant be at least 21 years old at the time of the unlawful intercourse. Section 269, subdivision (a)(1), contains no such requirement, so the elements test is not met. The information contains no allegation that Moya was 21 years old at the time of the offense, nor any facts that would compel that conclusion, alleging only that the victim was under 14 years old and Moya was at least seven years older. Thus, the accusatory pleading test is not satisfied.

Subdivision (c) of section 261.5, however, is a lesser included offense of section 269, subdivision (a)(1). To violate section 261.5, subdivision (c), a defendant must have sexual intercourse with a minor who is more than three years younger than the defendant. A defendant cannot rape a child under the age of 14 and seven years or more younger without also having sexual intercourse with a minor three years or more younger. Thus, section 261.5, subdivision (c), is a lesser included offense of section 269, subdivision (a)(1). (See *Shockley*, *supra*, 58 Cal.4th at p. 404.)

The trial court erred in failing to instruct the jury on section 261.5 only if there was evidence from which reasonable jurors could have concluded that Moya violated section 261.5, subdivision (c), but not section 269, subdivision (a)(1). (See *Breverman*,

19

*supra*, 19 Cal.4th at p. 162.) For present purposes, the relevant distinction between these two offenses is that section 269, subdivision (a)(1), requires proving the intercourse was "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury," while section 261.6, subdivision (c) has no such requirement. (§§ 261, subd. (a)(2), 269, subd. (a)(1).) Thus, Moya was entitled to an instruction on section 261.5, subdivision (c), only if a juror could reasonably have concluded Moya and Doe had sexual intercourse, but it was not accomplished against Doe's will.

On appeal, Moya has not disputed that there was more than enough evidence to allow the jury to conclude that Doe did not willingly have sexual intercourse with him. Among other things, Doe testified that Moya resisted her attempts to push him off, and he used threats to keep her silent, both during and after the sexual assaults. But the presence of evidence supporting a greater conviction is not the absence of evidence to support a lesser conviction. However unlikely it is that an 11- or 12-year-old child willingly engaged in sexual intercourse with someone she viewed as an uncle, we hesitate to say there was insufficient evidence to support such a conclusion. Moya told police that Doe was a willing participant in sexual contact, and indeed that she insisted on it. In theory, a juror could have concluded Doe was telling the truth about having sexual intercourse with Moya but was misremembering or deceptive about her willingness.

Nevertheless, assuming substantial evidence supported an instruction on section 261.5, subdivision (c), and the trial court erred in failing to give it, we may reverse only if

20

there is a reasonable probability that the error affected the outcome. (*Breverman*, *supra*, 19 Cal.4th at p. 165.) And we find no such reasonable probability. The evidence directly supporting the notion that Doe willingly had sex with Moya is vanishingly weak; just Moya's own, self-serving statement to police, made only after first trying to deny any sexual contact at all. Doe's own statements to police and testimony at trial, describing Moya's behavior in detail as well as her own responses and reasoning, and corroborated in part by her mother's observations on the evening of December 3, 2019, is comparatively much stronger evidence.

Moya also emphasizes certain circumstantial evidence that he contends supports his "claim of a consensual sexual encounter." The same circumstances, however, are more consistent with the prosecution's version of events. That Moya acted appropriately towards Doe when others were around is not evidence that she was a willing participant in sexual activity conducted when they were alone. It is hardly surprising that a child who has been raped might not immediately report the assault, or might be initially reluctant to talk to her mother or police about what happened, especially if her silence has been coerced by threats to kill her and her family if she told anyone. It is a stretch, at best, to interpret Doe's testimony that she "thought maybe it was my fault . . . [b]ecause I should have stopped him instead of not stopping him" or that she expressed concern about "getting in trouble" as evidence she was a willing participant in sex, rather than the normal responses of an abused child. Particularly in the context of Doe's testimony that she tried and failed to push Moya away, that she did not (in Moya's words) "say anything

to [Moya] to make him stop," is not evidence of her willing participation.[6] (See, e.g., *People v. Thomas*, *supra*, 15 Cal.App.5th at p. 1071 ["'Force' includes circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude"].) The same is true of Doe's lack of physical injuries, and that Moya did not use weapons or restraints to accomplish sexual intercourse.

We note also that Moya's statement to police claimed sexual contact with Doe only twice, on December 3, 2019, and once a day or two before. Doe initially told police of three or four previous sexual assaults, and testified at trial that it was actually five or six. The jury's verdicts show it believed Doe, returning guilty verdicts relating to December 3, 2019 (counts 4 and 5) and three previous incidents (counts 1, 2 and 3). It is implausible, even if not quite impossible, that the jury believed Doe about the number of times she and Moya had sexual contact, but found credible Moya's claim that Doe was a willing participant. Also, the jury was instructed on simple assault as a lesser included offense to each of the charged counts, and yet it chose to find Moya guilty as charged. We find no reasonable probability that, given that alternative to an all-or-nothing verdict, a jury would believe Moya's account of Doe as a willing participant in sex, and yet return the verdicts it did.[7]

---

[6] Moreover, Doe's testimony was that she *did* say things to try to make Moya stop.

[7] As Moya notes, both defense and prosecution told the jury that simple assault did not apply on the facts. The jury was also instructed, however, that it was up to the

*[footnote continued on next page]*

We are not persuaded that there is any reasonable probability that the jury would have found Moya guilty of violating only section 261.5, subdivision (c), rather than the greater offense of aggravated sexual assault by rape in violation of section 269, subdivision (a)(1), if it had been instructed on the lesser included offense. Subdivision (d) of section 261.5 is not a lesser included offense of section 269, subdivision (a)(1), and subdivision (j) of section 289 is not a lesser included offense of section 269, subdivision (a)(5). Thus, Moya has not demonstrated any prejudicial error in the jury instructions.

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

---

jury, and the jury alone, to decide what happened, and in case of a conflict between attorney comments and the jury instructions, the instructions govern. (See CALCRIM no. 200) The jury was not given an all-or-nothing choice of verdict, even in the absence of an instruction on section 261.5, subdivision (c).