Filed 5/31/24  P. v. Gutierrez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHNNY GABRIEL GUTIERREZ,<br><br>    Defendant and Appellant. | F085854<br><br>(Super. Ct. No. VCF160215B)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kimberley A. Donohue and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

Defendant Johnny Gabriel Gutierrez was convicted in 2006 of two counts of assault by means of force likely to produce great bodily injury, with enhancements for inflicting great bodily injury and committing the offenses for the benefit of a criminal street gang. He was also found to have committed a prior "strike" conviction within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d))[1] which also qualified as a serious felony conviction (§ 667, subd. (a)). He was originally sentenced to 27 years in prison. Since then, he has been resentenced twice. This fourth appeal arises from defendant having been resentenced to a term of 24 years eight months on remand ordered in our prior opinion which affirmed defendant's convictions and remanded the matter to the trial court to consider the impact of Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 124 (2021–2022 Reg. Sess.) (Assembly Bill 124) on defendant's sentence.

Defendant does not challenge the jury verdict and does not raise any issues impacting his conviction on appeal. Defendant contends that his sentence must be vacated and the case remanded for resentencing. First, defendant claims that the trial court abused its discretion by failing to strike his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), which gives the court the power to strike a prior strike conviction if it is in the "interests of justice" to do so. In the alternative, defendant contends that the court abused its discretion under Senate Bill No. 81's (2021–2022 Reg. Sess.) (Senate Bill 81) amendment to section 1385 by failing to dismiss his prior strike conviction. Defendant also argues that he should have been afforded the benefit of the ameliorative change in the law under Assembly Bill 124's amendments to section 1170, subdivision (b)(6)(B) and the court should have considered his youth at the time of the commission of the offenses. Last, defendant claims that the

---

[1]    All further statutory citations are to the Penal Code.

sentence imposed in this case amounts to cruel and unusual punishment under the state and federal constitutions.

The People respond that the trial court did not err when it sentenced defendant. Defendant failed to show that the court's sentencing decision was unreasonable considering his violent behavior, in combination with his criminal history, which did not place him outside the spirit of the Three Strikes law. Moreover, the People maintain that the sentence did not involve multiple enhancements because the Three Strikes law is an alternative sentencing scheme and not an enhancement. Also, even if defendant argued that there were multiple enhancements in one sentence on appeal, which he did not, the People argue that the court properly concluded that dismissal of an enhancement would endanger public safety. The People further contend that the aggravating circumstances warranted a middle term sentence despite defendant's youth, and defendant's sentence was neither cruel nor unusual.

We affirm.

## PROCEDURAL BACKGROUND

On May 6, 2006, the Tulare County District Attorney filed an information charging defendant with assault by means of force likely to produce great bodily injury on H.J. (§ 245, former subd. (a)(1); count 1) and assault by means of force likely to produce great bodily injury on J.O. (§ 245, subd. (a)(1); count 2). As to both counts, the information alleged defendant had suffered a prior strike conviction (§§ 667, subds. (b)−(i), 1170.12, subds. (a)–(d)). As to count 1, the information alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)), that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that defendant had suffered a prior serious felony conviction (§ 667, subd. (a)(1)). As to count 2, the information alleged that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)).

3.

A jury found defendant guilty as charged on counts 1 and 2. The jury also found true the great bodily injury allegation on count 1 and the gang allegations on counts 1 and 2. In a bifurcated proceeding outside the presence of the jury, the trial court found true the prior conviction allegations.

On March 29, 2007, the trial court sentenced defendant to an aggregate term of 27 years in prison as follows: on count 1, six years (the middle term, doubled due to the prior strike conviction), plus a five-year prior serious felony conviction enhancement (§ 667, subd. (a)(1)), plus a three-year serious bodily injury enhancement (§ 12022.7, subd. (a)), plus a 10-year gang enhancement (§ 186.22, subd. (b)(2)(C)); and on count 2, two years (one-third of the middle term, doubled due to the prior strike conviction), plus a one-year gang enhancement (§ 186.22, subd. (b)(1)(A)), consecutive to the sentence on count 1.

In 2007, defendant appealed his convictions and sentence. In 2008, we affirmed the judgment. (*People v. Gutierrez I* (July 22, 2008, F052787) [nonpub. opn.].)

In 2017, defendant filed a petition before the trial court " 'for modification of sentence and to correct illegal enhancements.' " The court denied defendant's petition.

In 2018, defendant appealed the denial of his petition. He argued that the trial court improperly imposed the gang and great bodily injury enhancements for count 1. While the matter was pending before this court, the trial court held several hearings in response to two letters from the Department of Corrections and Rehabilitation (CDCR), identifying errors and requesting recall and correction of defendant's sentence. On September 7, 2018, the court recalled defendant's sentence and imposed an aggregate term of 26 years eight months by making the following modifications to the original sentence: on count 1, imposing eight years (the upper term, rather than the middle term previously imposed, doubled due to the prior strike conviction) and striking the great

4.

bodily injury enhancement; and on a felony vandalism count in an unrelated case,[2] imposing a consecutive eight-month term (one-third of the middle term) imprisonment. This court was not made aware of those modifications to defendant's sentence during the pendency of defendant's second appeal.

On December 17, 2018, we vacated defendant's sentence and remanded to the trial court because defendant's sentence had impermissibly been enhanced by two enhancements based on defendant's " 'infliction of great bodily injury on the same victim in the commission of a single offense.' " (*People v. Gutierrez II* (Dec. 17, 2018, F055773) [nonpub. opn.].)

In 2020, the trial court held a hearing on remand from the opinion on defendant's second appeal. The court noted that the great bodily injury enhancement had already been stricken on September 7, 2018. The court denied defendant's motion to conduct another resentencing hearing deciding that there were no further errors to address. Defendant appealed.

In 2022, we affirmed defendant's convictions and sentence. However, we remanded the matter to the trial court to correct the abstract of judgment. Thereafter, defendant filed a petition for rehearing. He raised two new sentencing issues for the first time. Even though those issues were cognizable when the third appeal was pending, we granted the petition. We agreed that defendant's sentence should be vacated and remanded to the court with instructions to address defendant's contentions based on Senate Bill 567 and Assembly Bill 124. (*People v. Gutierrez III* (Sept. 8 2022, F081666) [nonpub. opn.].)

On March 1, 2023, the trial court held a resentencing hearing. Defendant moved to strike his prior serious felony conviction, prior strike conviction, and all enhancements beyond a single enhancement. He also requested a lower term based on his youth at the

---

**2** The felony vandalism count was charged in case No. VCF151780.

5.

time of the commission of the offenses.  Lastly, defendant argued that his sentence was cruel and unusual, violating the Constitution.  The court was unpersuaded.

The trial court resentenced defendant to an aggregate term of 24 years eight months in prison, as follows:  on count 1, six years (the middle term, doubled due to the prior strike conviction), plus a 10-year gang enhancement, plus a five-year prior serious felony enhancement;[3] on count 2, two years (one-third of the middle term, doubled due to the prior strike conviction), plus a one-year gang enhancement, to run consecutively to the term on count 1; and on the unrelated felony vandalism count, eight months (one-third of the middle term), consecutive to the term on count 2.

## FACTUAL BACKGROUND

On February 25, 2006, H.J. and his friend, J.O. attended a birthday party.  While they were at the party, about 10 to 12 men were standing across the street, looking towards the house where the party was located, drinking, and wearing red, the color of Northern gang members.  J.O. was wearing blue.

Later that night, J.O. was attacked when he went outside to make a call.  When H.J. went outside, he saw J.O. in a fetal position and about four males kicking and hitting him.  As H.J. pulled one of the attackers off J.O., he was hit in the head with an iron folding chair and fainted.  Witnesses saw defendant kick and stomp on H.J.'s head about three times.

During the fight, a witness recognized defendant to be a Northern gang member, addressed him by name, and asked what he was doing.  Defendant ran.  Defendant was apprehended by police the next day.  At the time of apprehension, police confiscated defendant's red shoelaces, baseball cap with a Northern gang symbol on the front, and belt buckle with gang insignia.

---

**3**      On count 1, the trial court imposed and then stayed the lesser included gang enhancement under section 186.22, subdivision (b)(1)(A).

## DISCUSSION

### I.    <u>Motion to Strike a Prior Strike Conviction</u>

Defendant claims that the trial court abused its discretion when it failed to strike his prior strike conviction under the circumstances of this case, noting the amount of time that he has served in prison, the nature, and remoteness of the prior strike, which he argues placed him "outside the spirit" of the Three Strikes law. The People disagree. We agree with the People.

#### A. Additional Background

Defendant argued at the most recent sentencing hearing that his prior strike should be stricken pursuant to *Romero*, *supra*, 13 Cal.4th 497. In support, defendant argued that his prior strike was very old. He also contended that "spray painting a building"— referring to his prior serious felony offense of vandalism with a gang enhancement—is not a violent crime.

The People opposed striking defendant's prior strike considering his prior record of convictions, his crimes were increasing in severity and frequency, and the proximity of the prior strike to the present offenses.

Defendant also asked the trial court to strike the five-year serious felony conviction and impose the lower term on count 1. Both parties noted that their arguments overlapped on striking the prior strike, striking the serious felony conviction enhancement, and the appropriate term.[4] The court impliedly denied defendant's *Romero* request and doubled his base term on counts 1 and 2 due to his prior strike conviction.

---

[4] Defendant's counsel commented that his section 1170, subdivision (b)(6) argument in favor of imposing the lower term incorporated "the arguments [he] made for the *Romero* motion, [including] the nature of the prior strike …." Based on his *Romero* argument, "it would be in the interest of justice to impose the lower term." Likewise, the prosecutor commented that "[t]he reason for not striking the [five-year serious felony conviction] enhancement would be the same arguments that [he] made regarding denying the *Romero* motion."

The court's reasoning for declining to strike defendant's prior strike conviction, declining to strike the challenged enhancements, and declining to impose the lower term all largely overlapped. That reasoning, in full, was as follows:

> "As to factors in mitigation, the [c]ourt finds factors in mitigation that the defendant was under 26 years of age at the time of the commission of the offense[s], that application of an enhancement could result in a sentence of over 20 years, and that multiple enhancements are alleged in a single case.

> "As to factors in aggravation, I do note the defendant has engaged in violent conduct which indicates a serious danger to society. The defendant's prior convictions as an adult are numerous. The defendant was on formal probation when the crime was committed, and the defendant's prior performance on formal probation was unsatisfactory. [¶] … [¶]

> "I also note that the circumstances of [these] offense[s] involve a brutal gang attack involving the defendant kicking and stomping on one victim's head, causing great bodily injury, which the jury did find.

> "As pointed out by the prosecutor, this took place one month after the defendant was convicted and sentenced for another gang offense for which he received a suspended state prison sentence and credit for time served.

> "The circumstances of the present offense[s] involve a second victim who was also beat during this attack which was committed in conjunction with several gang members.

> "Also, the nature of the attack was such that the action or the fight was not spontaneous. The circumstances indicate that the victims were neighbors and wearing the wrong color, and they were being watched by the defendant and his cohorts, and there was an ultimate attack. That's compelling to the [c]ourt, that it was not something spontaneous, at least as provided from the facts known to the [c]ourt.

> "Also, I note according to the defendant's record, that he has involved himself in criminal activity since conviction. Here there's a conviction from 2009 out of Delano, which I suspect indicated it occurred in the Delano institution here. The conviction is felony possession of [a] weapon while in custody.

"So in sum, I find that the countervailing considerations outweigh the mitigating factors, and it is not in the interest of justice to give the mitigated term for [c]ount 1 … [¶] [or, u]nder … [s]ection 1385 [subdivision] (c)(3)(B) and (C), the [c]ourt does decline to strike the enhancement for [c]ount 2 ….

"And this also applies to the [c]ourt's analysis for striking the enhancements, one of them, for [c]ount 1 under either … [s]ection 186.22 or … [s]ection 667[, subdivision] (a).

"I've given great weight to the mitigating factor of multiple enhancements and that the application of an enhancement could result in a sentence of over 25 years under [subdivisions (b)] and [(c) of section 1385] in favor of dismissal, but the [c]ourt finds that dismissal would endanger public safety, and is not in the interest of justice overall to do so. Specifically, I find that dismissal would result in physical injury and serious danger to others based on the viciousness of the gang attack involved in this case, and defendant's direct involvement.

"Again, I note that [these] offense[s] occurred one month after a previous gang offense, and I know that while in prison, defendant continues to commit crimes involving weapons, and according to the probation report, continues to involve himself in criminal activity.

"Also, as to the interest of justice, I do note the aggravating factors previously referenced.

"As to imposition of the five-year enhancement under … [s]ection 667[, subdivision] (a), I do decline to strike it or strike the punishment as it was properly imposed as addressed by Judge Paden in September of 2018 for the reasons I've indicated today at this hearing."

## B. Analysis

We review the trial court's denial of defendant's motion to strike his prior felony conviction for an abuse of discretion. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) For example, an abuse of discretion occurs where the trial court was not " 'aware of its discretion' " to dismiss or where the court considered impermissible factors in declining to dismiss. It is not enough to show that reasonable people might disagree about whether to strike one or more prior conviction allegations. A court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person

could agree with it.  (*Id*. at p. 637; see *People v. Carmony* (2004) 33 Cal.4th 367, 377–378.)

In *Romero*, *supra*, 13 Cal.4th at pages 529 to 530, our Supreme Court concluded that "section 1385[, subdivision] (a) … permit[s] a court acting on its own motion to strike prior felony conviction allegations in cases brought under the Three Strikes law." (See also *People v. Strong* (2001) 87 Cal.App.4th 328, 335.)  The state high court emphasized, however, that "[a] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited.  Its exercise must proceed in strict compliance with section 1385[, subdivision] (a) and is subject to review for abuse." (*Romero*, at p. 530.)  " ' "[T]he language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]" [Citations.]' " (*Romero*, at p. 530.)  " ' "[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." ' " (*Romero*, at p. 531.)

In *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), our Supreme Court gave further definition to the standard for dismissing a strike—"in furtherance of justice"—by requiring that the defendant be deemed "outside the spirit" of the Three Strikes law before a strike was dismissed:  "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*Id*. at p. 161.)

Following *Williams*, *supra*, 17 Cal.4th 148, the overwhelming majority of California appellate courts have reversed the dismissal of, or affirmed the refusal to dismiss, a strike for defendants with a long and continuous criminal career.  (E.g., *People v. Stone* (1999) 75 Cal.App.4th 707, 717 [no abuse of discretion in refusing to vacate one

10.

of defendant's strikes because defendant "is an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed"]; *People v. Thornton* (1999) 73 Cal.App.4th 42, 49 [reversing order dismissing two of three strikes, where defendant had a long history of felonies, misdemeanors, drug use, and parole violations, which showed that his background, character, and prospects were "dismal, and cannot be said to be outside the spirit of the [T]hree [S]trikes law"]; see also *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475 [reversing dismissal of strike where defendant's criminal history extended back to when he was 15 years of age, including previous felonies, various misdemeanors, and parole and probation violations].)

Although the trial court did not specifically address the *Romero* motion, the court still made the requisite findings necessary when declining to strike the prior strike. The court noted that defendant's prior convictions as an adult are numerous.[5] Moreover, the court found that defendant continued to commit crimes while incarcerated. Defendant's criminal behavior increased in frequency and severity. Considering these factors alone, the trial court was within its discretion not to strike defendant's prior strike conviction. (*People v. Stone*, *supra*, 75 Cal.App.4th at p. 717.)

The trial court addressed the nature and circumstances of defendant's present offenses, which involved a "brutal gang attack" of two innocent victims. The court stated that defendant and his cohorts watched the victims and then assaulted them. Defendant

---

[5]    Defendant's long and continuous criminal career began in 1995, when he was placed on informal juvenile probation for assault. A year later he was placed on formal juvenile probation for charges of battery, theft, and vandalism. Twice as a juvenile, defendant was granted probation for possession of a weapon, and in 2003, he was placed on summary probation. As an adult, defendant continued with his criminal behavior, with a conviction for burglary, public intoxication, resisting arrest, and petty theft. He was then convicted of felony vandalism, which was gang related. Only one month after being released from incarceration on the felony vandalism conviction, defendant committed the instant offenses.

"kick[ed] and stomp[ed] on one victim's head, causing great bodily injury …." The second victim was also beaten in this attack by several gang members.

The trial court also reasoned that the offenses occurred just one month after defendant was released from custody on a prior serious felony conviction, which involved another gang offense for which he received a suspended prison sentence and credit for time served. The court's decision not to strike defendant's prior strike, based on its observance that defendant had two convictions within a short time frame, was sound. The existence of two convictions within a short time frame revealed that defendant " 'had been taught … that such criminal conduct was unacceptable but had failed or refused to learn his lesson.' " (*Williams*, *supra*, 17 Cal.4th at p. 163 [The Supreme Court considered the defendant's past criminal conduct, including the fact that the defendant failed to " 'learn his lesson' " despite his past recidivism and the fact three months before the defendant committed the charged offense he committed a prior offense, and held that the defendant's prior strike should not be stricken].)

Defendant argues that his prior strike should have been stricken because it was remote.[6] "In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; see *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124 [a prior strike conviction is not properly stricken merely because it is 30 years old].) "To be sure, a prior conviction may be stricken if it is remote in time. In criminal law parlance, this is sometimes referred to as 'washing out.' [Citations.] The phrase is apt because it carries the connotation of a crime-free cleansing period of rehabilitation after a defendant has

---

[6] Defendant relies on section 1385, subdivision (c)(2)(H)—which triggers a presumption in favor of dismissal of *enhancements* based on prior convictions more than five years old—for the proposition that his prior strike conviction should have been stricken because it is more than five years old. As explained in more detail in the next section, section 1385, subdivision (c)(2) does not apply to the Three Strikes alternative sentencing scheme.

12.

had the opportunity to reflect upon the error of his or her ways." (*Humphrey*, at p. 813.) Here, defendant did not live a legally blameless life after his prior strike conviction. (*Ibid*.) As noted, he committed the current offenses only one month after release from incarceration on probation for the prior strike. The fact that defendant has been incarcerated for the last 17 years is also not significant because he did not refrain from criminal activity during that time span. He committed the felony offense of manufacturing a weapon while in custody in Delano under section 4502, subdivision (a). Defendant's prior strike was not washed out. It cannot be considered remote for the purposes of the Three Strikes law.

Defendant also relies on the point that the prior serious felony strike should be stricken because of its nature, that it was not a crime involving actual violence, but "spray painting a building." However, this views the prior strike in isolation and a court must accord "preponderant weight … to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161.) In striking an allegation, our Supreme Court looks to many factors regarding the defendant as a whole instead of looking at just the prior strike.

In addition to relying on defendant's prior serious felony, the trial court considered many other factors. While we agree that the prior strike of vandalism was not violent, it was a serious felony that was gang related. The present offenses involved a gang attack that involved violence and planning. As set forth above, defendant had a criminal career spanning 10 years prior to committing the instant offenses. The offenses occurred one month after defendant was released on probation from a previous gang offense. The court considered a variety of appropriate factors when it denied defendant's *Romero* motion.

Defendant also cites *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*) in his attempt to convince us that the trial court erred in not striking his prior felony conviction.

13.

Age and remoteness of prior criminal conduct was part of the basis to strike the prior felony conviction in *Avila*. (*Id*. at p. 1144.) As discussed above, defendant's conviction is not remote for purposes of the Three Strikes law. Moreover, the court in *Avila* considered several other mitigating factors in striking the defendant's prior strike conviction, including the fact that much of the defendant's criminal conduct was related to his drug addiction rather than to sinister motives, none of his current offenses were violent or serious, the current offense was unsophisticated in nature, and although he was charged with felony attempted robbery, he used no actual force and caused property damage only amounting to $20. In light of those factors, the *Avila* court concluded that the defendant fell outside the realm of what could be considered the work of a career criminal. (*Id*. at pp. 1144–1145.) In contrast, defendant's present offenses involved a violent gang attack. Defendant is a recidivist. He had a criminal history spanning 10 years that involved violence. He committed a subsequent felony while incarcerated. A 24-year eight-month prison sentence imposed on defendant was not "outside the spirit" of the Three Strikes law. (See, e.g., *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1172–1173 [defendant had 10 current offenses and a lengthy criminal record]; *People v. Haller* (2009) 174 Cal.App.4th 1080, 1088 [current offense involved threats of violence]; *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1507–1508 (*Martinez*) [current offense involved a gun; priors included violent felonies and 50 misdemeanors].)

## II.   <u>Senate Bill 81</u>

Defendant argues that the court abused its discretion after it declined to strike the prior strike and the enhancement under section 667, subdivision (a), considering Senate Bill 81's amendments to section 1385, subdivision (c), which creates the presumption of striking multiple enhancements. The People respond that Senate Bill 81 applies only to enhancements, and the Three Strikes law is an alternative sentencing scheme, not an enhancement, relying on *People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*). Defendant claims that *Burke* was wrongly decided.

Defendant also argues that there was no substantial evidence that supported the court's public safety findings because the prior felony strike was not violent. The People disagree, and contend that the court did not dismiss the enhancement under section 667, subdivision (a) because the court rightly found that dismissal of multiple enhancements would endanger public safety. We agree with the People.

## A. Additional Background

At the most recent sentencing hearing, defendant argued that the trial court should strike the section 667, subdivision (a) enhancement under section 1385, claiming that there is no public safety concern because defendant is 39 years old, has been in prison for so long, and application of multiple enhancements could result in a sentence over 20 years.

The trial court declined to strike the enhancements on counts 1 and 2, including the five-year section 667, subdivision (a) serious felony conviction enhancement and the 10-year section 186.22, subdivision (b)(1)(C) gang enhancement, finding it not in the interest of justice to do so. The court found that dismissal would endanger public safety and result in physical injury and serious danger to others based on the viciousness of the gang attack and defendant's direct involvement.

## B. Analysis

## 1. Application of Senate Bill 81 to the Three Strikes law

Effective January 1, 2022, Senate Bill 81 amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (§ 1385, subd. (c); *People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Section 1385, subdivision (c) now provides:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances … are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(1)–(2).)

Notably, mitigating circumstances include, in pertinent part:

"(B) Multiple enhancements are alleged in a single case.

"(C) The application of an enhancement could result in a sentence of over 20 years."  (§ 1385, subd. (c)(2)(B), (C).)

Subdivision (c) of section 1385 expressly applies to the dismissal of an "enhancement."  (§ 1385, subd. (c)(1).)  Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning.  (*Burke*, *supra*, 89 Cal.App.5th at p. 243.)  The term "enhancement" has a well-established technical meaning in California law.  (*Ibid*.)  " 'A sentence enhancement is "an *additional term* of imprisonment added to the base term." ' "  (*Ibid*.)  "It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense."  (*Ibid*.)  "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law."  (*Ibid*.)  "Because the statutory language is clear and unambiguous, we follow its plain meaning."  (*Ibid*.)  "The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement."  (Italics added.)  (*Id*. at p. 244.)

As the *Burke* court concluded, the plain language of section 1385, subdivision (c) applies only to an enhancement, and imposition of a sentence that includes a prior strike conviction is not an enhancement, but part of the Three Strikes alternative sentencing scheme.  (*Burke*, *supra*, 89 Cal.App.5th at p. 244.)  We agree with the *Burke* court's reasoning and conclusion in full.  (Accord, *People v. Olay* (2023) 98 Cal.App.5th 60;

16.

*People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2 [§ 1385, subd. (c)'s provisions regarding enhancements do not apply to prior strike conviction allegations].)

### 2. Application of Senate Bill 81 to Striking Multiple Enhancements

On appeal, defendant contends that the trial court erred when it declined to strike the prior strike allegation and the enhancement under section 667, subdivision (a), challenging whether the court's public safety findings are supported by substantial evidence. As noted above, we conclude that section 1385, subdivision (c) applies only to enhancements and not the Three Strikes law. (See *Burke*, *supra*, 89 Cal.App.5th at p. 244.) Defendant *does not* argue that imposition of the five-year section 667, subdivision (a) enhancement and the 10-year gang enhancement imposed on count 1, and the one-year gang enhancement imposed on count 2, ran afoul of the "multiple enhancements" imposed in the same case. (§ 1385, subd. (c)(2)(B)).

However, even if defendant intended to challenge the trial court's imposition of multiple enhancements in the same case, which he does not on appeal, his argument fails for at least two reasons. First, defendant forfeited that argument by failing to raise it below; and second, even if we reached the merits, we would find that the court properly exercised its discretion not to dismiss the enhancements based on its conclusion, supported by substantial evidence, that dismissal of an enhancement would endanger public safety.

As a threshold matter, defendant did not seek dismissal of the 10-year or one-year gang enhancements below, and his argument is therefore forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion … cannot be raised for the first time on appeal"].)

As to the merits, a trial court retains discretion over the decision to strike multiple enhancements at sentencing if the dismissal would endanger public safety, notwithstanding the "shall be dismissed" language in section 1385, subdivision (c)(2)(B) and (C). (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296–297; *People v. Cota*

(2023) 97 Cal.App.5th 318, 425.) The "shall be dismissed" language in section 1385, subdivision (c)(2)(C), like the language of all of the listed mitigating circumstances in that section, "applies only if the court does *not* find that dismissal of the enhancement would endanger public safety." (*Mendoza*, at p. 296.) " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

Here, the trial court found that dismissal of multiple enhancements in the same case would endanger public safety. Specifically, the court found that dismissal would result in physical injury and serious danger to others based on the viciousness of the gang attack and defendant's direct involvement in that attack. The court went on to note other considerations, such as the fact that the current offenses occurred one month after a previous gang offense, and while in prison, defendant continued to involve himself in criminal activity. We find that the court did not abuse its discretion when it refused to dismiss multiple enhancements in the same case based on its finding that to do so would endanger public safety.

## III.    Assembly Bill 124

Next, defendant contends that the trial court abused its discretion by imposing the middle term because section 1170, subdivision (b)(6)(B), as added by Assembly Bill 124, required imposition of the lower term considering defendant's youth at the time of the commission of the offenses. Defendant further argues the aggravating factors found true by the court were not supported by substantial evidence. The parties agree that Assembly Bill 124 applies in this case. The People respond that the trial court was aware of section 1170, subdivision (b)(6)(B) at the time of sentencing and adequately set forth the circumstances in aggravation that outweighed the mitigating factors for imposition of the middle term. We agree with the People.

## A. Additional Background

At the sentencing hearing, the trial court considered section 1170, subdivision (b)(6)(B) and defendant's youth—22 years of age—at the time of the commission of the offenses. As to the factors in mitigation under section 1170, subdivision (b)(6)(B), the court found:

> "[D]efendant was under 26 years old at the time of the commission of the offense[s]."

As to factors in aggravation, the trial court noted that defendant engaged in violent conduct which indicates a serious danger to society, defendant's prior convictions as an adult are numerous, defendant was on formal probation when the crime was committed, and defendant's prior performance on formal probation was unsatisfactory.

The trial court further considered:

> "[The] offense[s] involve[d] a brutal gang attack involving … defendant kicking and stomping on one victim's head, causing great bodily injury. [¶] … [¶]

> "The … present offense[s] involve[d] a second victim who was also beat during this attack which was committed in conjunction with several gang members.

> "Also, the nature of the attack was such that the action or the fight was not spontaneous. The circumstances indicate that the victims were neighbors and wearing the wrong color, and they were being watched by … defendant and his cohorts, and there was an ultimate attack. That's compelling to the [c]ourt, that it was not something spontaneous, at least as provided from the facts known to the [c]ourt."

The trial court found that the aggravating circumstances outweighed the mitigating factors, and it did not find it in the interest of justice to give the mitigated term.

## B. Analysis

We are asked to consider whether the trial court abused its discretion in imposing the middle term sentence despite defendant's youth under section 1170, subdivision (b)(6)(B). In reviewing for abuse of discretion, the burden is on the party

19.

attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 376.) To meet that burden, our Supreme Court held that there must be a showing that the court was unaware of the scope of its discretionary powers, or its exercise of discretion was irrational or arbitrary. (*Ibid.*; see also *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; *People v. Gaines* (2023) 93 Cal.App.5th 91, 142.) In the absence of such a showing, the court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. (*Carmony*, at pp. 376–377.) Because "all discretionary authority is contextual," we cannot determine whether a trial court acted irrationally or arbitrarily in imposing a middle-term sentence to a defendant who was under 26 years old at the time of the commission of the offenses without considering the legal principles the court was required to consider in making the decision. (See *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.)

Effective January 1, 2022, Assembly Bill 124 amended section 1170 regarding determinate sentencing. (*People v. Jones* (2022) 79 Cal.App.5th 37, 44, fn. 11.) Under the amendment, the lower term sentence became the presumptive maximum term of imprisonment if a defendant's "youth" was a "contributing factor" in his commission of the offense. (§ 1170, subd. (b)(6)(B).) A "youth" for purposes of section 1170, subdivision (b)(6)(B) is a person under 26 years of age at the time of the commission of the offense. (§§ 1016.7, subd. (b), 1170, subd. (b)(6)(B).)

Section 1170, subdivision (b)(6)(B), "does not mandate a presumption in favor of the lower term in every case in which the defendant was under age 26 at the time the crime was committed." (§ 1170, subd. (b)(6); *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991.) Rather, this provision establishes a presumption of the lower term if the defendant's youth was a contributing factor in the commission of the crime. (*Fredrickson*, at p. 991.) Once triggered, the statutory presumption applies unless

the court finds that aggravating circumstances outweigh mitigating circumstances such that the lower term would be contrary to the interest of justice. (*Id*. at pp. 991–992.)

Here, the trial court implicitly found that defendant's age contributed to his offenses. It therefore commented that it was required to impose the mitigated term unless the aggravating circumstances outweighed the mitigating circumstances such that it would be contrary to the interest of justice to impose the mitigated term.

California Rules of Court, rule 4.421[7] sets forth the circumstances in aggravation, which include in pertinent part:

> "Factors relating to the crime …: [¶] [t]he crime involved great violence, great bodily harm, … viciousness, or callousness; [¶] … [¶] [t]he manner in which the crime was carried out indicates planning." (Rule 4.421(a)(1), (8).)

> "Factors relating to the defendant …: [¶] defendant has engaged in violent conduct that indicates a serious danger to society; [¶] defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; [¶] … [¶] defendant was on probation … when the crime was committed; [¶] defendant's prior performance on probation … was unsatisfactory." (Rule 4.421(b)(1), (2), (4), (5).)

Here, the trial court found that the aggravating circumstances outweighed the mitigating factors, which were: the circumstances of the present offenses involved great violence; the attack was not spontaneous and required planning; defendant engaged in violent conduct that indicates a serious danger to society; defendant's prior adult convictions were numerous; defendant was on formal probation when he committed the offenses in this case; defendant's prior performance on formal probation was unsatisfactory. (Rule 4.421(a)(1), (8) & (b)(1), (2), (4), (5).) The trial court understood its discretion. Its decision to impose the middle term was not irrational or arbitrary. We find no abuse of discretion.

---

[7] All further references to rules refer to the California Rules of Court.

Next, defendant argues that the trial court abused its discretion in imposing the middle term because substantial evidence did not support the court's findings that the fight was planned and the victims were neighbors wearing the wrong color. However, well before the findings made at the resentencing hearing at issue in this appeal, the court appears to have made the findings to which defendant now objects. Specifically, before us relative to this point is the reporter's transcript of the judgment proceedings on March 29, 2007. Therein, the People noted the facts: that the offenses were a one-sided fight, defendant and his fellow gang members "crashed a nine year old's birthday party…, resulting in the victims being attacked [and] stomped to the ground." There was no objection or offer of opposing and/or differing evidence. Moreover, in the parties' sentencing briefs and at the recent sentencing hearing, there was no objection or offer of evidence to the contrary by either party. Defendant now belatedly challenges the sufficiency of the evidence to support the court's findings. A defendant who does not object to the court's reliance on an improper factor in sentencing may not challenge the sentence on appeal. (*People v. Scott*, *supra*, 9 Cal.4th at p. 353.) Defendant's claim is forfeited.

Even assuming defendant did not forfeit his challenge, the trial testimony was not provided in this appeal. Defendant cannot claim that there is insufficient evidence without providing some evidence or testimony that is different from the record that is before us.[8] "The orders of the trial court are presumed to be valid and [the] defendant has

---

[8]    With respect to the underlying facts of this case, the record before us contains the probation officer's summary of the offenses and our prior unpublished opinions in this case *People v. Gutierrez II*, *supra*, F075773 and *People v. Gutierrez III*, *supra*, F081666. Both parties rely on the latter of our prior opinions (which in turn relied on the former opinion in *People v. Gutierrez I*, *supra*, F052787) for their factual summaries in this case. In *People v. Gutierrez III*, *supra*, F081666 at pp. 3−4, the fact*s* explained that defendant was a Northerner, affiliated with the color red, and J.O. attended his friend H.J.'s nine-year-old nephew's birthday party wearing a blue checkered shirt which was affiliated with a rival gang, although J.O. was not a gang member. Approximately 10 to 12 men wearing red clothing and holding "red rags" congregated across the street from

the burden of providing a record adequate to support his arguments on appeal." (*People v. Malabag* (1997) 51 Cal.App.4th 1419, 1427.) "Having failed to obtain a more complete record or to explain any inability to do so, [the] defendant must rely on the record at hand …." (*Id.* at p. 1425.) "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence" supporting the trial court's finding. (*People v. Tully* (2012) 54 Cal.4th 952, 1006.) Here, the whole record is not before us because defendant failed to obtain a complete record that accurately reflects all of the evidence presented at trial regarding the challenged aggravating circumstances. Generally, we must assume the evidence not before us would support the trial court's decision. (See, e.g., *Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Thus, on this challenge to the sufficiency of the evidence to support the aggravating circumstances, the gap in the record on appeal works to defendant's detriment, effectively preventing us from determining whether the evidence was insufficient. Defendant has failed to support his argument; we cannot conclude on the record before us that the evidence was insufficient to support the court's findings that the attack in this case was planned and was carried out because the victims were wearing the wrong colors.

---

the birthday party after J.O. and H.J. were seen wearing blue by "a grown man with a red handkerchief wrapped around his hand." (*Id.* at pp. 4−5.) The group of "about 10 men," including defendant, all wore red when they attacked J.O. and H.J. (*Id.* at p. 5.) The opinion *People v. Gutierrez III*, further explained that defendant testified "that he [was] a [gang] member, [and] views anybody in a rival gang as an enemy" but denied attacking H.J. for gang reasons. (*Id.* at p. 6.) Defendant's claim that he did not attack H.J. for gang reasons was not believed by the jury which found the gang allegations true. (*Id.* at p. 7.) The probation officer's report included H.J.'s comment that he was also wearing blue and believed that he and J.O. were attacked because they were wearing blue.

While the probation officer's report and our prior opinions are not evidence, they are the only documents in the record before us that give any indication of the facts the trial court had access to at the resentencing hearing. We note that the court "fully reviewed this case" and commented that although the probation report was "[i]n some respects … deficient," the court was prepared for sentencing.

## IV. Cruel and Unusual Punishment

Defendant contends that his sentence is so disproportionate to his convictions that it violates the California and federal Constitutions' prohibitions on cruel and unusual punishment. We disagree.

### A. Additional Background

Defendant contended at the recent resentencing hearing that this is an old case, his sentence is "outrageous," and violated the Eighth Amendment. The trial court considered defendant's argument. The court concluded that his sentence was not constitutionally infirm. The court reasoned that the punishment was not cruel or unusual stating, "persons with a prior are in a dissimilar situation to persons without a prior."

### B. Analysis

The Eighth Amendment to the United States Constitution applies to the states. (*People v. Caballero* (2012) 55 Cal.4th 262, 265.) It prohibits cruel and unusual punishment. (U.S. Const., 8th Amend.) "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 265–266, 272 [a life sentence for credit card fraud of $80, passing a $28.36 forged check, and obtaining $120.75 by false pretenses was not grossly disproportionate in violation of the Eighth Amendment].) Similarly, the standard for what constitutes cruel and unusual punishment is extremely rigorous. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 69 [two consecutive 25-year-to-life sentences imposed for two thefts of items worth less than $150 is not cruel or unusual].) Given that the United States Supreme Court has upheld sentences for minor, nonviolent property crimes, it follows that defendant's sentence for two felony assaults with a prior serious felony conviction and extensive prior history of criminal conduct does not violate the federal Constitution.

Like the federal Constitution, the California Constitution also prohibits the infliction of cruel or unusual punishment. (Cal. Const., art. I, § 17.) A punishment

violates the California constitutional prohibition on cruel or unusual punishment if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity. (*People v. Baker* (2018) 20 Cal.App.5th 711, 723.)

To determine whether a particular punishment is disproportionate to the offense for which it is imposed, we conduct a three-pronged analysis. (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1431.) First, we examine the nature of the offense and/or the offender, with regard to the degree of danger both present to society. (*Ibid*.) " 'A look at the nature of the offense includes a look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of [the] defendant's acts. A look at the nature of the offender includes an inquiry into whether "the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." [Citation.] Next, we compare the challenged punishment with the punishment prescribed for more serious crimes in the same jurisdiction. And finally, the challenged punishment is compared with punishment for the same offense in other jurisdictions.' " (*Id*. at pp. 1431–1432.)

The circumstances of the present offenses include an unprovoked, violent gang attack on two victims causing great bodily injury. The nature of the attack involved planning and defendant was directly involved. Defendant's prior record is far from impeccable. The current offenses occurred one month after defendant was released on probation for a previous serious felony gang offense. His other crimes of conviction were for battery, burglary, theft, resisting arrest, weapon offenses, and disorderly conduct.

As the trial court concluded when it reasoned that the punishment was not cruel or unusual at the sentencing hearing, "persons with a prior are in a dissimilar situation with persons without a prior, and I do not find under the circumstances here that the punishment is cruel and unusual under the Eighth Amendment." Defendant's punishment

was imposed because of his recidivism.  (See *People v. Cline* (1998) 60 Cal.App.4th 1327, 1338 [The court found it not necessary to compare defendant's punishment with punishments in the state for more serious crimes, since this analysis is "inapposite to [T]hree [S]trikes sentencing because it is a defendant's recidivism, in combination with his current crimes, that places him under the Three Strikes law].)  "[S]ociety is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies." (*Martinez*, *supra*, 71 Cal.App.4th at p. 1512.)  "If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period." (*Ibid*.)  Nonetheless, an examination of other California offenses reveal that defendant's sentence was not cruel or unusual.  (*People v. Romero*, *supra*, 99 Cal.App.4th at p. 1433 [the defendant's sentence of 25 years to life, under California's recidivist statute for felony petty theft did not constitute cruel or unusual punishment].)

In comparing defendant's punishment for the same offenses in other jurisdictions, defendant argues that California's Three Strikes law is among the " ' "most extreme" ' " recidivist schemes in the nation.  (*Avila*, *supra*, 57 Cal.App.5th at p. 1149.)  However, the notion that California's punishment scheme is among the most extreme does not compel the conclusion that the sentence is cruel or unusual.  (*People v. Romero*, *supra*, 99 Cal.App.4th at p. 1433.)  " '[The] state constitutional consideration does not require California to march in lockstep with other states in fashioning a [P]enal [C]ode.  It does not require "conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide." [Citation.]  Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct.' " (*Ibid*.; see *Martinez*, *supra*, 71 Cal.App.4th at p. 1516.)  Defendant places great emphasis on the fact that since his prior offense was "not dangerous," his sentence in the instant matter qualifies as cruel and unusual punishment.  However, defendant again focuses only on the prior strike and fails to consider the totality of the circumstances surrounding

the current offenses that can bear the weight of the sentence imposed.[9]  (See *Avila, supra*, 57 Cal.App.5th at p. 1147; *People v. Romero, supra*, 99 Cal.App.4th at pp. 1431–1432.)

Defendant's sentence of 24 years eight months in prison is not so disproportionate as to shock the conscience that would warrant relief.

## DISPOSITION

The judgment is affirmed.

---

[9]  For example, the present offenses involved a  violent and planned gang attack. Defendant had a criminal career spanning 10 years prior to committing the instant offenses.  The offenses occurred one month after defendant was released on probation from a previous gang offense.